Karen A. Confoy
Paul W. Kalish
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Phone: (609) 844-3033
kconfoy@foxrothschild.com
pkalish@foxrothschild.com

OF COUNSEL:

Matthew J. Oppenheim
Scott A. Zebrak
Nicholas C. Hailey
Ever M. Hess
**OPPENHEIM + ZEBRAK, LLP**
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
ever@oandzlaw.com

*Attorneys for Plaintiff Pearson Education, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PEARSON EDUCATION, INC., | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR** |
| v. | ) | **COPYRIGHT INFRINGEMENT** |
| | ) | **(17 U.S.C. § 101, *et seq.*)** |
| CHEGG, INC., | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

Plaintiff Pearson Education, Inc. ("Pearson"), for its Complaint against Defendant Chegg, Inc. ("Chegg"), alleges, on personal knowledge as to matters relating to Pearson and on information and belief as to all other matters, as set forth below.

## NATURE OF THE CASE

1.      Pearson is the world's leading learning company.  Through an enormous investment of money, time, and effort, Pearson creates and publishes many of the world's greatest educational textbooks.  Pearson's textbook titles span virtually all academic subject areas and are widely used at universities, colleges, and schools around the world to maximize the learning experience for millions of students annually.  Pearson brings this case to address systematic and widespread copyright infringement that simultaneously undermines learning.

2.      As part of Pearson's focus on pedagogy, Pearson and its authors devote significant creative effort to develop effective, imaginative, and engaging questions to include in the textbooks it publishes.  Pearson's end-of-chapter questions are strategically designed and carefully calibrated to reinforce key concepts taught in the textbooks, test students' comprehension of these issues, enhance students' problem-solving skills, and, ultimately, improve students' understanding of the subject matter.  Pearson's textbooks can contain hundreds or thousands of end-of-chapter questions.  These end-of-chapter questions form core components of the teaching materials contained in Pearson textbooks and are frequently hallmarks of Pearson titles.  As such, the availability, quality, and utility of these questions are often important considerations when educators select which textbooks to adopt for their courses.

3.      Pearson owns and/or controls the exclusive rights to the copyrights of its textbooks, including the hundreds or thousands of original end-of-chapter questions typically contained within each textbook, and Pearson has the exclusive right to control the preparation

and distribution of answer sets to the questions in Pearson's textbooks.  The sale of a work that is based on, and copies from, the creative efforts of Pearson and its authors violates Pearson's exclusive rights under the Copyright Act.

4.  Chegg is a company that sells textbook answers.  The majority of Chegg's $644 million in total revenue in 2020 came from its sales of answers through a service called "Chegg Study," which costs $14.95 a month, with subscribers surging by 67% to 6.6 million in 2020. Chegg hires thousands of freelancers to prepare answers to textbook questions.  Chegg then systematically publishes these answer sets on the Chegg Study website, where they are organized by the titles of the corresponding textbooks—using precisely the same unit, chapter, and topic orders and naming conventions for the questions employed in the textbooks—so that students can easily search for and find answers to the textbook questions they have been assigned.  Today, Chegg boasts of having "millions of homework answers" to end-of-chapter questions from 9,000 textbooks, a significant number of which are published by Pearson.

5.  By using and copying Pearson's original creative content to make answer sets based on that content, Chegg infringes Pearson's exclusive rights as a copyright holder, including the rights of reproduction, preparation of derivative works, and distribution.  If, when, and how Pearson provides answer sets to its textbook questions is a right owned by Pearson that Chegg usurped for itself.

6.  Textbook questions are intended to be part of the learning progression.  Educators assign selected textbook questions as homework and as study aids to help in the education process.  Chegg's infringement through the sale of answer sets, covering most if not all of the questions in textbooks, diminishes educators' ability to use the textbooks and end-of-chapter

questions and can even lead educators to reconsider using Pearson's textbooks as components of their courses.

7.      Pearson and Chegg have done business with each other in several ways over the years.  But no aspect of the parties' business dealings with one another—or the law—permits Chegg's conduct complained of herein.  Pearson has told Chegg both verbally and in writing to remove the answers from Chegg Study.  Yet Chegg continues to violate Pearson's copyrights on a massive scale, including as to Pearson's highest-profile, signature textbooks.

8.      Chegg's infringement harms students, authors, educators, learning institutions, and, of course, Pearson and other educational publishers.  If left unchecked, Chegg will continue to infringe and cause damage.  Accordingly, Pearson brings this action.

## JURISDICTION AND VENUE

9.      This is a civil action in which Pearson seeks injunctive relief and damages under the Copyright Act, 17 U.S.C. § 101, *et seq*.  As such, the Court has original subject matter jurisdiction over Pearson's copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has personal jurisdiction over Chegg because Chegg continuously and systematically transacts business in New Jersey, it committed tortious acts in New Jersey, and Pearson's claims arise from those activities.  Chegg transacts business in New Jersey by, *inter alia*, promoting its Chegg Study website, including the infringing content contained on the website, to consumers in New Jersey; making the commercial and highly-interactive Chegg Study website, including the infringing content contained on the website, accessible to consumers in New Jersey; charging and profiting from subscriptions to consumers in New Jersey to access the Chegg Study website, including the infringing content contained on the website;

distributing content from the Chegg Study website, including the infringing content, to consumers in New Jersey; and entering into commercial agreements with companies in New Jersey.  As explained further herein, Chegg's infringement harms Pearson in New Jersey, and undermines students' learning in New Jersey.

11.     Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and (c), because Chegg conducts, transacts, and/or solicits business in this District, and a substantial part of the acts of infringement and other events and omissions alleged herein occurred in this District.

## GENERAL ALLEGATIONS

### Pearson And Its Business

12.     Pearson is a Delaware corporation with a principal place of business at 221 River Street, Hoboken, New Jersey 07030.

13.     Pearson is the world's preeminent learning company, with global reach and market-leading businesses in education, business information, content development, and consumer publishing.  Pearson serves students, educators, and learning institutions by providing quality content, assessment tools, and educational services across all media.  From print and digital textbooks to next-generation online learning solutions, Pearson develops and provides a comprehensive range of traditional and innovative educational content and tools, on virtually all subjects, to maximize the learning experience for students.  Pearson's educational products serve millions of learners every year and are used by academic institutions and in other learning environments spanning the globe.

14.     Pearson works closely with its authors to select, plan, create, write, edit, organize, and arrange the content within each of Pearson's textbooks, including as to the unique set of end-

of-chapter questions that forms a critical component of each title.  Pearson and its authors continuously work to edit the material in Pearson's textbooks and refine the manner that material is taught for subsequent textbook editions, with end-of-chapter questions playing a crucial role. New editions adopt and incorporate changes to the underlying substantive content and integrate new pedagogy to teach that content.  Through this ongoing creative process, Pearson's textbooks—including the end-of-chapter questions contained in them—evolve and improve.  In writing, updating, and revising its textbooks and end-of-chapter questions, Pearson and its authors make subjective choices as to the specific material to include and the manner and order in which to present that material.  Pearson and its authors select, arrange, and emphasize content in Pearson's textbooks based on their expertise in the material and the needs of the scholastic community.

15.     Pearson and its authors carefully develop richly original end-of-chapter questions to illustrate and reinforce key concepts, assess students' understanding of the material, and deepen student engagement in the learning process.  Pearson's end-of-chapter questions are meticulously and strategically designed to reinforce key concepts taught in the textbooks, test students' comprehension of these issues, and, ultimately, improve students' understanding of the subject matter.  These end-of-chapter questions are often hallmarks of Pearson's textbooks, and the availability, quality, and utility of such questions are frequently important considerations when educators select which textbooks to adopt for their courses.  Pearson textbooks typically include hundreds or thousands of distinctive questions.

16.     In devising textbook questions, Pearson and its authors make numerous subjective choices.  Pearson's questions reflect original expression in their wording and prose, and choices regarding particularized facts, fact patterns, and answer-choice combinations, as well as their

order, arrangement, and coverage.  Pearson's end-of-chapter questions, which are subject to peer review, correspond to and interact with the other subject matter content in the textbooks, enabling students to better learn and engage the content and therefore adding to the value of the products.  Crafting these questions is just one aspect of the many creative decisions that Pearson and its authors make to express their unique views and understandings as to how to best teach the material in Pearson's textbooks.  Along with the various other content contained in the textbooks, these end-of-chapter questions are Pearson's original creative work.

17.     Pearson owns or has the exclusive license to, among others, the copyrights in innumerable valuable textbooks, including the textbooks in Exhibit A.  The textbooks in Exhibit A are the subject of, or otherwise protected by, valid and subsisting U.S. copyright registrations. The textbooks in Exhibit A represent a non-exhaustive, representative list of Pearson's copyrighted textbooks, spanning a broad range of subject matters and including many of Pearson's most well-known and successful titles, which Chegg has infringed.  The copyrights and copyright registrations for Pearson's textbooks include and protect the end-of-chapter questions contained in those textbooks.

18.     One of Pearson's best-known and most successful titles is LISA A. URRY ET AL., CAMPBELL BIOLOGY (11th ed. 2017) ("CAMPBELL BIOLOGY").  First published in 1987, CAMPBELL BIOLOGY is now in its eleventh edition.  Believed to be the most widely used science textbook in the world, it is estimated to have been used by over 6.5 million students.  Some sixty percent of Americans under the age of forty in the fields of biology, biotechnology, biology education, and medicine began their college studies with this textbook.  Researching, writing, and updating CAMPBELL BIOLOGY involves momentous creative input.  The textbook is organized into eight separate units, containing 56 individual chapters, each of which includes a

set of unique questions to help students measure their understanding of the material in the chapter. CAMPBELL BIOLOGY features nearly 1,000 end-of-chapter questions, which are protected by copyright.

19.     Another one of Pearson's highly-regarded and popular titles is ELAINE N. MARIEB ET AL., HUMAN ANATOMY & PHYSIOLOGY (11th ed. 2019) ("MARIEB HUMAN ANATOMY & PHYSIOLOGY"). Since first being published in 1989, Dr. Marieb's textbook is estimated to have been studied by more than 3 million healthcare professionals, and it is currently studied by students at hundreds of colleges and universities worldwide. For her work on anatomy and physiology textbooks, *Time Magazine* named Dr. Marieb to its 2016 list of the "100 Most-Read Female Writers in College Classes," alongside such authors as Virginia Woolf, Jane Austen, and Toni Morrison. The process of developing, drafting, and revising MARIEB HUMAN ANATOMY & PHYSIOLOGY has been a prodigious creative effort. The textbook is organized into five distinct units, containing 29 individual chapters, each of which is followed by a corresponding set of original end-of-chapter questions, which are specifically designed to elucidate key concepts and assess students' understanding of the material. In total, this title contains more than 800 such end-of-chapter questions, which are protected by copyright.

20.     Another well-known and successful Pearson title is ELAYN MARTIN-GAY, BASIC COLLEGE MATHEMATICS (6th ed. 2019) ("MARTIN-GAY BASIC COLLEGE MATHEMATICS"). Professor Martin-Gay has taught mathematics for more than 25 years, authoring more than a dozen arithmetic and algebra texts and earning numerous teaching awards. First published in 1999, MARTIN-GAY BASIC COLLEGE MATHEMATICS showcases a student-focused approach, accessible writing style, and innovative teaching methods. Today, MARTIN-GAY BASIC COLLEGE MATHEMATICS is used by thousands of students annually. The textbook's 11 chapters contain a

total of more than 7,500 individually-curated questions to aid students in learning the substantive material in each chapter, which are protected by copyright.

21.     For each of the 150 Pearson exemplar titles identified in Exhibit A, Pearson has invested substantial sums of money, time, expertise, and creative talent to develop the textbook and draft the end-of-chapter questions contained in the textbook, which are protected by copyright.

22.     Pearson invests significant resources annually to advertise and promote its educational products worldwide.  More broadly, Pearson has invested decades of effort into building a relationship of trust with educators and a reputation of superior quality in the publishing industry.

23.     The revenues from Pearson's sales and rentals of textbooks are important to its financial health and continued investment in working with authors to create and publish new works.

**Chegg And Its Infringing Conduct**

24.     Chegg is a Delaware corporation with its principal place of business at 3990 Freedom Circle, Santa Clara, California 95054.

25.     With its roots in buying and selling textbooks, Chegg has attempted to re-invent itself through its Chegg Study website, an online database with millions of off-the-shelf answers to end-of-chapter textbook questions and other problems.  Unlike Pearson, Chegg does not create its own textbooks or end-of-chapter questions.  Instead, Chegg wholly relies on the textbooks and end-of-chapter questions created by publishers and authors, then sells answers to those questions to students for profit.

26.     Chegg Study has comprehensive answer sets that together comprise 6 million answers to end-of-chapter textbook questions from 9,000 textbooks.  The work of preparing

these millions of answers is largely outsourced by Chegg to a force of 70,000 freelancers, with Chegg's Terms of Use specifically disclaiming any responsibility for the "accuracy or quality" of the answers. Chegg charges students $14.95 a month to access this ever-growing, searchable answer database. Chegg Study has become the company's primary revenue driver, with Chegg's subscription-based services—of which Chegg Study is the central offering—accounting for more than 80 percent of its revenues. The majority of Chegg's $644 million in total revenue in 2020 came from its sales of answers to students through Chegg Study.

27. Chegg promotes its Chegg Study website to students as a way to "[f]ind solutions for your homework[.]" Chegg Study enables students simply to copy and paste answers to the specific questions their educators selected from textbooks and assigned for homework.

28. Chegg's selling of answers to students has been widely criticized among educators and in the news media, and Chegg has been implicated in cheating scandals at colleges and universities across the United States. A recent investigation by *Forbes* magazine described Chegg as a "superspreader" of cheating, with 48 of the 52 students interviewed by the magazine saying that they used Chegg Study to cheat. Indeed, *Forbes* reported that the term "Chegging" has become synonymous with cheating. Meanwhile, a recent Imperial College London study published in the *International Journal for Educational Integrity* concluded that Chegg's purported academic integrity efforts are "not working[.]"

29. The infringement of Pearson's copyrights on the Chegg Study website is widespread and systematic. Chegg violates Pearson's copyrights with respect to each of the Pearson textbooks identified in Exhibit A, as well as numerous other copyrighted Pearson textbooks. Chegg directly infringes Pearson's exclusive rights of reproduction, preparation of derivative works, and distribution to the public, in violation of 17 U.S.C. §§ 106(1)-(3).

30.     Chegg does not produce its own textbooks with original end-of-chapter questions. Instead, Chegg usurps the creative expression of publishers like Pearson, damaging the value of their educational products.  The Chegg Study answers are based entirely on Pearson's questions, they incorporate protected expression from those questions, and they serve no purpose—and have no meaning or value—in the absence of Pearson's copyrighted works.

31.     Chegg infringes Pearson's rights on a massive scale.  For a given Pearson title, Chegg Study typically provides answers to hundreds or even thousands of end-of-chapter questions.  Chegg Study generally covers all or most of the questions in the textbook, and it undermines the value and utility of those questions and that textbook to educators.

32.     For example, a search for CAMPBELL BIOLOGY on Chegg Study reveals that Chegg provides 759 answers for that textbook alone.



33.     Meanwhile, a search for MARIEB HUMAN ANATOMY & PHYSIOLOGY on Chegg Study returns 702 answers.



34.     Similarly, a search for MARTIN-GAY BASIC COLLEGE MATHEMATICS returns 7,827 answers.



35.     The overall magnitude of Chegg's infringement is staggering.  In some cases, Chegg provides answers to more than 10,000 questions for a single Pearson textbook.  Across the 150 Pearson titles listed in Exhibit A, Chegg provides hundreds of thousands of answers to Pearson's end-of-chapter textbook questions.  And this represents just a fraction of Chegg's infringement.

36.     In some cases, the Chegg Study answers simply copy and repeat Pearson's end-of-chapter questions, or other copyrighted Pearson content, verbatim.  In other instances, Chegg copies certain portions of Pearson's original expression and paraphrases others.  In all cases, the Chegg Study answers inherently rely on and incorporate Pearson's protected expression.

37.     Pearson's end-of-chapter questions frequently employ detailed, fictitious fact patterns to illustrate key concepts and test students' comprehension of those concepts.  The Chegg Study answers often copy, repeat, paraphrase, and rely upon Pearson's original fact patterns.

38.     For example, in MARIEB HUMAN ANATOMY & PHYSIOLOGY, Pearson's "Review Question" 29 in Chapter 23 asks students:

> *A baby is admitted to the hospital with a history of diarrhea and watery feces occurring over the last three days.  The baby has sunken fontanelles, indicating extreme dehydration.  Tests indicate that the baby has a bacterium-induced colitis, and antibiotics are prescribed.  Because of the baby's loss of intestinal juices, do you think that his blood pH would indicate acidosis or alkalosis? Explain your reasoning.*

The Chegg Study answer to Pearson's question references the question directly and begins by mirroring Pearson's language almost word-for-word:

> *A baby is admitted in a hospital who is suffering with a history of diarrhoea and watery faeces occurring over last three days.  The baby has sunken fontanelles, indicating extreme dehydration. . . .  Tests indicate that the baby is suffering with bacterium induced colitis, and antibiotics are prescribed.  This is due to loss of intestinal juices. . . .*

Chegg then provides an answer solving the problem, undermining the learning process.

A student looking to "Chegg" an assigned question can merely search the question on Chegg and copy and paste the answer into the assignment.

39.     By way of further example, Pearson's "Review Question" 25 in Chapter 13 of MARIEB HUMAN ANATOMY & PHYSIOLOGY queries:

> *Fumiko, a 19-year-old nursing student, had had a runny nose and sore throat for several days. Upon waking, her face felt "twisted." When she examined her face in the mirror, she noticed that the right side looked "droopy" and she was unable to move the facial muscles on that side. This made it difficult to speak clearly or eat. Which cranial nerve was affected and on which side? What is a common cause of this condition?*

The Chegg Study answer once again directly references the question, repeating and incorporating

Pearson's fictitious fact pattern, nearly verbatim:

> *. . . A patient of 19-year-old nursing student her face felt "twisted" when she was walking [sic] and she examined her face in the mirror. She noticed that the right side looked "droopy" and she was unable to move the facial muscles on that side . . . .*

Then, Chegg provides an answer to Pearson's question, again shortcutting the learning

process.

40.    Similarly, Pearson's "Review Question" 30 in Chapter 15 of the same title asks:

> *Mrs. Orlando has been noticing flashes of light and tiny specks in her right visual field. When she begins to see a "veil" floating before her right eye, she makes an appointment to see the eye doctor. What is your diagnosis? Is the condition serious? Explain.*

Again, Chegg repeats and incorporates Pearson's original fact pattern before answering

the question:

> *The patient O. has been noticing flashes of light and tiny specks in her right visual field. She begins to see a floating veil before her right eye. The diagnosis may be retinal detachment. . . .*

41.    Chegg's provision of answers to Pearson's end-of-chapter questions from other

titles follows the same pattern. For instance, in MARTIN-GAY BASIC COLLEGE MATHEMATICS,

Pearson's "Chapter Review" Question 181 in Chapter 1 asks students:

> *A manufacturer of drinking glasses ships his delicate stock in special boxes that can hold 32 glasses. If 1714 glasses are manufactured, how many full boxes are filled. Are there any glasses left over?*

The Chegg Study answer copies the language of Pearson's question before answering the question:

> *Consider that a manufacturer of drinking glasses ships his delicate stock in special boxes that can hold 32 glasses.  If 1714 are manufactured, number of full boxes are filled is 1714÷32 . . . .*

42.     Similarly, Pearson's "Exercise" 55 in Chapter 1.8 of the same title asks:

> *The Meishs' yard is in the shape of a rectangle and measures 50 feet by 75 feet. In their yard, they have a rectangular swimming pool that measures 15 feet by 25 feet.*
>
> *a. Find the area of the entire yard.*
>
> *b. Find the area of the swimming pool.*
>
> *c. Find the area of the yard that is not part of the swimming pool.*

The Chegg Study answer to Pearson's question again references the question directly and copies Pearson's language:

> *It is given that Meish's yard is in the shape of rectangle and has a swimming pool in it.  The dimensions of the plot and the pool are given to be 50 feet by 75 feet and 15 feet by 25 feet respectively.  We are required to find the following:*
>
> *(i) The area of the entire yard.*
>
> *(ii) The area of the swimming pool.*
>
> *(iii) The area of the yard excluding the pool's area. . . .*

43.     Even where the Chegg Study answers do not repeat Pearson's questions verbatim or paraphrase them, those answers are based upon, and are necessarily derived from, Pearson's questions and other protected expression from Pearson's textbooks.  The answers are a byproduct of the questions, and a result of the creativity set forth in the questions.  Further, by providing answers to the questions, Chegg lessens the value of those questions as pedagogical tools and violates Pearson's right to derive and market answers to the questions.

44.     In addition to the written answers on Chegg Study, Chegg also provides video answers to many of Pearson's questions on Chegg Study.  Like the written answers, these video answers infringe Pearson's copyrights, often to an even greater extent.

45.     For example, in Chapter 1 of CAMPBELL BIOLOGY, Pearson's "Test Your Understanding" Question 6 asks students:

*Which of the following is an example of qualitative data?*

*A. The fish swam in a zigzag motion.*

*B. The contents of the stomach are mixed every 20 seconds.*

*C. The temperature decreased from 20°C to 15°C.*

*D. The six pairs of robins hatched an average of three chicks each.*

The Chegg Study video answer repeats the question word-for-word—including each of the four unique multiple-choice options—before providing students the answer to the question.

46.     The next Chegg Study video answer, to Pearson's "Test Your Understanding" Question 7 from Chapter 1 of the same title, goes even further—repeating the question and each of the four multiple-choice options verbatim, before reproducing those multiple-choice options onscreen:



47.     Prior to preparing the Chegg Study answers to Pearson's questions, Chegg obtained or had in its possession copies of Pearson's textbooks, including the end-of-chapter questions contained in them.

48.     Chegg referred to and/or relied upon Pearson's textbooks and end-of-chapter questions in preparing answers to Pearson's questions.

49.     The Chegg Study answers reproduce protected material from Pearson's questions and contain a significant amount of protected expression from Pearson's questions.

50.     In preparing the answers, Chegg copied and paraphrased the text of Pearson's questions, along with Pearson's myriad choices as to what to reinforce, how, in what order, and more.

51.     Chegg has sold answers to Pearson's end-of-chapter questions as set forth herein in violation of Pearson's copyrights from at least June 1, 2021 to the present.  The date that the infringement commenced will be determined during discovery.

52.     Besides violating Pearson's copyrights through its sale of answers to Pearson's end-of-chapter questions, Chegg has also without authorization reproduced and/or distributed Pearson's end-of-chapter questions verbatim preceding those answers beginning on a date unknown and continuing until at least June 1, 2021, and for some questions even to the present. Here too, the date that the infringement commenced will be determined during discovery.

53.     Chegg's ongoing infringement of Pearson's copyrights harms Pearson in many ways.  In particular, Chegg's conduct undermines the value of Pearson's textbooks and end-of-chapter questions as a learning tool for students and as an assessment tool for educators, jeopardizes the adoption of Pearson's textbooks by educators, harms Pearson's reputation as a

source of rigorously-developed teaching materials, and impairs Pearson's educational mission more broadly.

**FIRST CLAIM FOR RELIEF**
**Direct Copyright Infringement—17 U.S.C. § 106(1)**
**Unauthorized Reproduction**

54.     Pearson re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 of this Complaint.

55.     Pearson's textbooks, including its end-of-chapter questions, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, and they have been duly registered by Pearson with the United States Copyright Office.  At all relevant times, Pearson has been and still is the owner of all rights, title, and interest in and to its copyrights in these works.

56.     Chegg has copied and reproduced Pearson's end-of-chapter questions from Pearson's copyrighted textbooks without authorization.

57.     As detailed above, Chegg, without permission or consent of Pearson, has made unauthorized reproductions of Pearson's works.  Such activity constitutes infringement of Pearson's registered copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(1) and 501.

58.     Chegg's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.  As a result of Chegg's unlawful and deliberate conduct as set forth above, Pearson has been, and will continue to be, damaged.

59.     Chegg's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Pearson, for which Pearson has no remedy at law. Unless Chegg is restrained by this Court from continuing its infringement of Pearson's

copyrights, these injuries will continue to occur in the future.  Pearson is accordingly entitled to injunctive relief restraining Chegg from further infringement.

## SECOND CLAIM FOR RELIEF
### Direct Copyright Infringement—17 U.S.C. § 106(2)
### Unauthorized Derivative Work

60.     Pearson re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 of this Complaint.

61.     Pearson's textbooks, including its end-of-chapter questions, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, and they have been duly registered by Pearson with the United States Copyright Office.  At all relevant times, Pearson has been and still is the owner of all rights, title, and interest in and to its copyrights in these works.

62.     Chegg has prepared unauthorized derivative works from Pearson's copyrighted textbooks without authorization.

63.     As detailed above, Chegg, without permission or consent of Pearson, has prepared unauthorized derivative works based on Pearson's original works.  Such activity constitutes infringement of Pearson's registered copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(2) and 501.

64.     Chegg's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.  As a result of Chegg's unlawful and deliberate conduct as set forth above, Pearson has been, and will continue to be, damaged.

65.     Chegg's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Pearson, for which Pearson has no remedy at law. Unless Chegg is restrained by this Court from continuing its infringement of Pearson's

copyrights, these injuries will continue to occur in the future. Pearson is accordingly entitled to injunctive relief restraining Chegg from further infringement.

**THIRD CLAIM FOR RELIEF**
**Direct Copyright Infringement—17 U.S.C. § 106(3)**
**Unauthorized Distribution**

66. Pearson re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 of this Complaint.

67. Pearson's textbooks, including its end-of-chapter questions, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, and they have been duly registered by Pearson with the United States Copyright Office. At all relevant times, Pearson has been and still is the owner of all rights, title, and interest in and to its copyrights in these works.

68. Chegg has distributed Pearson's end-of-chapter questions from Pearson's copyrighted textbooks without authorization.

69. Chegg has distributed derivative works of Pearson's copyrighted textbooks without authorization.

70. As detailed above, Chegg, without permission or consent of Pearson, makes unauthorized distributions both of Pearson's works and derivative works of Pearson's works. Such activity constitutes infringement of Pearson's registered copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(3) and 501.

71. Chegg's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful. As a result of Chegg's unlawful and deliberate conduct as set forth above, Pearson has been, and will continue to be, damaged.

72. Chegg's actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Pearson, for which Pearson has no remedy at law.

Unless Chegg is restrained by this Court from continuing its infringement of Pearson's copyrights, these injuries will continue to occur in the future. Pearson is accordingly entitled to injunctive relief restraining Chegg from further infringement.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Pearson seeks relief from this Court as follows:

1.     Judgment on each of the claims set forth above, including that Chegg's infringement of Pearson's works was intentional and willful;

2.     An order requiring Chegg to pay Pearson such damages as Pearson has sustained as a consequence of Chegg's unlawful acts as alleged above, including Pearson's actual damages and Chegg's profits from the infringement, or, in the alternative, statutory damages, at Pearson's election, pursuant to 17 U.S.C. § 504;

3.     An order enjoining Chegg and all persons who are in active concert or participation with Chegg from further infringing upon Pearson's copyrights, pursuant to 17 U.S.C. § 502;

4.     An order requiring Chegg to deliver up for destruction all products, packaging, labels, literature, advertising, and other material made or used in violation of Pearson's copyrights, pursuant to 17 U.S.C. § 503;

5.     Pearson's costs and attorneys' fees, pursuant to 17 U.S.C. § 505;

6.     Prejudgment and post-judgment interest at the applicable rate; and

7.     Such other and further relief as the Court deems proper.

## JURY TRIAL DEMAND

Pearson hereby requests a trial by jury.

Dated:  September 13, 2021                    Respectfully submitted,


                                             */s/ Karen A. Confoy*
                                             Karen A. Confoy
                                             Paul W. Kalish
                                             **FOX ROTHSCHILD LLP**
                                             Princeton Pike Corporate Center
                                             997 Lenox Drive
                                             Lawrenceville, NJ 08648
                                             Phone: (609) 844-3033
                                             kconfoy@foxrothschild.com
                                             pkalish@foxrothschild.com

                                             OF COUNSEL:

                                             Matthew J. Oppenheim (*pro hac vice*
                                             application to be filed)
                                             Scott A. Zebrak (*pro hac vice* application to
                                             be filed)
                                             Nicholas C. Hailey (*pro hac vice* application
                                             to be filed)
                                             Ever M. Hess
                                             **OPPENHEIM + ZEBRAK, LLP**
                                             4530 Wisconsin Avenue, NW, 5th Floor
                                             Washington, DC 20016
                                             Phone: (202) 480-2999
                                             matt@oandzlaw.com
                                             scott@oandzlaw.com
                                             nick@oandzlaw.com
                                             ever@oandzlaw.com

                                             *Attorneys for Plaintiff Pearson Education,
                                             Inc.*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Plaintiff, through its attorneys, certifies that the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

Dated:  September 13, 2021                    */s/ Karen A. Confoy*                    
                                             Karen A. Confoy

## CERTIFICATION PURSUANT TO L. CIV. R. 201.1

The undersigned certifies that the matter is not subject to compulsory arbitration because Plaintiff seeks damages in excess of $150,000, exclusive of interests and costs and any award of attorneys' fees.

Dated:  September 13, 2021                    */s/ Karen A. Confoy*                    
                                             Karen A. Confoy

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of Plaintiff Pearson Education, Inc.'s

Complaint was filed via ECF and served on all counsel of record by electronic mail on

September 13, 2021.

Dated:  September 13, 2021                    _/s/ Karen A. Confoy_                              
                                                            Karen A. Confoy