Marie L. Mathews, Esq. (N.J. Attorney No. 002432011)
Shirley U. Emehelu, Esq. (N.J. Attorney No. 193712019)
**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2127

Michael Sheetz, Esq. (*pro hac vice*)
**COOLEY LLP**
500 Boylston St.
Boston, MA 02116
Telephone: (617) 937-2300

John Paul Oleksiuk, Esq. (*pro hac vice*)
**COOLEY LLP**
1333 2nd St., Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400

Stephanie Schuyler, Esq. (*pro hac vice*)
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000

Laurence Pulgram (*pro hac vice* forthcoming)
David Hayes (*pro hac vice* forthcoming)
**FENWICK & WEST LLP**
555 California St.
San Francisco, CA 94104
Telephone: (415) 875-2300
*Attorneys for Defendant Chegg, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEARSON EDUCATION, INC., <br><br> Plaintiff, <br><br> -against- <br><br> CHEGG, INC., <br><br> Defendant. | Civil Action No. 2:21-cv-16866 (SDW-ESK) |

**DEFENDANT CHEGG, INC'S ANSWER TO PLAINTIFF'S COMPLAINT
FOR COPYRIGHT INFRINGEMENT AND AFFIRMATIVE DEFENSES**

Defendant Chegg, Inc. ("Chegg"), through its counsel, Cooley LLP, hereby answers the allegations in the Complaint ("Complaint") of Plaintiff Pearson Education, Inc. ("Plaintiff" or "Pearson") in the above action as follows:

**GENERAL RESPONSE**

Chegg is an innovative, publicly held education technology company that has put students' needs first since its founding in 2005. Chegg strives to make academic support affordable and accessible to students of all economic means. To that end, it offers students on-demand, low-cost educational support to supplement and complement traditional, in-classroom learning. Chegg supports students with tools designed to help them learn course materials, succeed in their classes, save money on required materials, and realize the value of the courses for which they pay. Because Chegg's products are available anytime online, Chegg's products also assist students when they are in a remote environment without access to many traditional educational resources. One of its products, Chegg Study, does this by providing students with new learning tools and resources that include original, step-by-step solutions to textbook questions to help students better understand the concepts being taught in their coursework and apply those principles in other contexts. Chegg's solutions walk students through the process of solving problems incrementally, through structured analysis. Chegg Study teaches students how to solve not only individual end-of-chapter questions, but also how to approach solving other problems of the same type. A student accessing Chegg's solutions learns by using them, just as a student learns when a teacher or tutor guides the student through the steps of solving a problem. As discussed at www.chegg.com/about/, at a time when classes and homework have gone digital, Chegg provides the kind of learning assistance that students need and value.

Chegg Study has invested in providing original, step-by-step solutions to textbook questions, including from Pearson textbooks, since approximately 2010. And for over a decade, Pearson not only acquiesced in the lawfulness of this practice, Pearson endorsed it and profited from it. Pearson's Complaint has obscured these facts. From April 2016 through May 2021, Pearson and Chegg had a Textbook Questions Distribution Agreement (the "License Agreement"), under which Pearson went so far as to license to Chegg the verbatim text of end-of-chapter problems from many of Pearson's textbooks, authorizing Chegg to add the display of the problems' text next to the millions of solutions that Chegg had already independently developed and the millions more that Chegg continued to create. Before the License Agreement, Chegg identified its step-by-step solutions through a combination of publication title, chapter, and question numbers so that students could locate the solution corresponding to a given problem. For over five years (pursuant to the License Agreement), Chegg Study also displayed the full problem text for those Pearson textbooks next to the solution that Chegg experts had created. Both during the License Agreement, and without it, the parties fully and explicitly understood that Chegg had and has every right to operate a platform displaying the independent *solutions* that Chegg creates, and that Pearson's alleged copyrights in its questions do *not* cover Chegg's solutions. Indeed, the License Agreement acknowledged what Pearson and the market already knew: that even prior to the License Agreement, Chegg "has developed websites that provide online homework help questions and solutions to students."

Over the years, Pearson watched Chegg grow and succeed by providing students affordable and convenient access to a suite of new educational services, including step-by-step solutions. In February 2021, after years of endorsing and profiting from Chegg's textbook solutions platform, Pearson demanded for the first time that Chegg take down the original step-by-step solutions to

Pearson textbook questions from Chegg Study, taking the position that a copyright in a textbook grants Pearson a monopoly over, and the ability to preclude anyone else from independently creating, solutions to the questions in textbooks.  Pearson's position is legally flawed, and fundamentally contrary to students' interests in full and equal access to learning opportunities.

Pearson's textbook copyrights do not grant it a monopoly over the right to solve an end-of-chapter problem.  The step-by-step solutions that Chegg has created and made available on Chegg's innovative platform do not infringe any Pearson copyrights.  To the contrary, the fundamental purpose of copyright is to promote creativity and expand public knowledge and understanding in furtherance of the public interest.  Pearson's assertions in this action seek to prohibit and deprive students of alternative learning resources, lock them in to paying for and using only Pearson services, and block innovation in and the accessibility of learning techniques that can help level the uneven playing field for access to educational success.  Pearson's assertion also defies—and obscures from the Court—the parties' course of dealing for over a decade.  As Pearson itself had long recognized, the mere fact that Pearson's textbooks contain "end-of-chapter questions" as alleged in the Complaint does not preclude innovators like Chegg from providing independently created solutions to those questions, nor from providing them in a manner that students can find and use.

Chegg responds to the Complaint's specific allegations further below.

## RESPONSES TO COMPLAINT ALLEGATIONS

## RESPONSES TO "NATURE OF THE CASE"

1.      Chegg denies the allegations in Paragraph 1.  Responding further, Chegg states that Pearson, through this lawsuit, is attempting to throttle lawful innovation by weaponizing Pearson's limited copyright interests and thereby reducing learning opportunities available to students.

2.      Chegg denies the allegations in Paragraph 2, except that Chegg admits that Pearson textbooks can contain hundreds or thousands of end-of-chapter questions.

3.      Chegg states that the allegations in Paragraph 3 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg lacks knowledge or information sufficient to form a belief as to the truth of certain allegations in Paragraph 3 and denies other allegations.  Chegg lacks knowledge or information sufficient to form a belief as to whether Pearson owns and/or controls the exclusive rights to the copyrights of the textbooks, and as to whether such copyright includes end-of-chapter questions typically contained within each textbook.  Chegg denies that Pearson has the exclusive right to control the preparation and distribution of answer sets to the questions in Pearson's textbooks, and Chegg denies that the sale of a work that is based on, and copies from, the creative efforts of Pearson and its authors necessarily violates Pearson's exclusive rights under the Copyright Act.  Chegg denies the remaining allegations in Paragraph 3.

4.      Chegg admits in part the allegations in Paragraph 4.  Chegg admits that Chegg experts prepare solutions to textbook questions.  Chegg denies the remaining allegations in Paragraph 4.

5.      Chegg states that the allegations contained in Paragraph 5 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 5.

6.      Chegg denies in part and admits in part the allegations in Paragraph 6 and lacks knowledge or information sufficient to form a belief as to the truth of other allegations in Paragraph 6.  Chegg admits that, as a general proposition and from time to time, educators assign selected questions found in textbooks as homework and as study aids as part of the education process.

Chegg lacks knowledge or information sufficient to form a belief as to the truth of Pearson's allegation that Pearson intends its textbook questions to be part of the learning progression. Chegg denies the remaining allegations in Paragraph 6.

7.      Chegg admits in part the allegations in Paragraph 7. Chegg admits that Pearson and Chegg have done business with each other in several ways over the years. Answering further, Chegg states that over the last decade, Pearson authorized Chegg's display of step-by-step solutions to Pearson textbook questions on its Chegg Study platform. Chegg notes that on or about April 26, 2016, Pearson and Chegg executed the License Agreement, by which Pearson granted Chegg a license to display the question text from Pearson textbooks alongside corresponding step-by-step solutions that had been created by Chegg for Chegg Study. Chegg also admits that Pearson told Chegg both verbally and in writing for the first time in or about February 2021, to remove "answers" from Chegg Study, following a decade of endorsing and profiting from Chegg's display of such solutions. The remaining allegations in Paragraph 7 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations.

8.      Chegg denies the allegations in Paragraph 8.

**RESPONSES TO "JURISDICTION AND VENUE"**

9.      Chegg states that the allegations in Paragraph 9 are legal conclusions to which no response is required.

10.      Chegg states that the allegations in Paragraph 10 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 10.

11.     Chegg states that the allegations in Paragraph 11 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 11.

## RESPONSES TO "GENERAL ALLEGATIONS"

**Responses to "Pearson and Its Business"**

12.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of Pearson's allegations about its own business contained in Paragraph 12.

13.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of Pearson's allegations about its own business contained in Paragraph 13.

14.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of Pearson's allegations about its own business contained in Paragraph 14.

15.     Chegg admits that Pearson textbooks in some cases include hundreds or thousands of questions.  Chegg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15.

16.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of Pearson's allegations about its own business contained in Paragraph 16.

17.     Chegg states that the allegations in Paragraph 17 are legal conclusions to which no response is required, but to the extent one may be deemed required, Chegg denies the allegation that it has infringed any of Pearson's copyrights and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17.

18.     Chegg admits that the 11th edition of CAMPBELL BIOLOGY contains eight separate units, containing 56 individual chapters, and that each chapter contains end-of-chapter questions. Chegg states that the allegation in Paragraph 18 that the identified questions are protected by copyright is a legal conclusion to which no response is required, but to the extent one may be

deemed required, Chegg denies the allegation.  Chegg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18.

19.     Chegg admits that the 11th edition of MARIEB HUMAN ANATOMY & PHYSIOLOGY is organized into five units, containing 29 individual chapters, and that each chapter is followed by a set of end-of-chapter questions.  Chegg states that the allegation in Paragraph 18 that the identified questions are protected by copyright is a legal conclusion to which no response is required, but to the extent one may be deemed required, Chegg denies the allegation.  Chegg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19.

20.     Chegg admits that the 6th edition of MARTIN-GAY BASIC COLLEGE MATHEMATICS contains 11 chapters and that those chapters include end-of-chapter questions.  Chegg states that the allegation in Paragraph 20 that the identified questions are protected by copyright is a legal conclusion to which no response is required, but to the extent one may be deemed required, Chegg denies the allegation.  Chegg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20.

21.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     Chegg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

**Responses to "Chegg and Its Infringing Conduct"**

24.     Chegg admits the allegations in Paragraph 24.

25.     Chegg admits that it started as a company that bought and rented and/or sold textbooks and that it does not create its own textbooks or end-of-chapter questions.  Answering

further, Chegg states that Chegg Study is an innovative educational resource to millions of students that provides solutions to end-of-chapter textbook questions, among many other services designed to assist students with challenges they face during the educational process. Chegg denies the remaining allegations in Paragraph 25.

26.     Chegg admits in part and denies in part the allegations in Paragraph 26. Chegg denies Pearson's allegation that it offers "answer sets," but admits that students can access approximately 6 million original, structured, step-by-step solutions to approximately 9,000 textbooks on Chegg Study in order to assist them in understanding the concepts they learn in their textbooks. Chegg denies that it "outsources" its work to "a force of 70,000 freelancers," but admits that Chegg experts participate in creating the original, step-by-step solutions available on Chegg Study. Chegg denies "disclaiming any responsibility for the accuracy or quality of the answers" for which it contracts, but admits that its Terms of Use state the following: "Chegg does not guarantee the accuracy or quality of answers or other study material that appear on the Services, some of which may be posted by other users." Chegg admits that a basic subscription to Chegg Study costs $14.95 per month, but states that a subscription provides access to multiple Chegg Study services, not just Chegg's step-by-step solutions. Chegg admits that its subscription-based services account for more than 80% of its revenues but denies that Chegg Study is either "the central offering" of those subscription-based services or Chegg's "primary revenue driver." Chegg denies that the majority of its 2020 revenue came from the "sale of answers."

27.     Chegg denies the allegations in Paragraph 27.

28.     Chegg admits in part and denies in part the allegations in Paragraph 28. Chegg admits that a *Forbes* article refers to Chegg as a "superspreader," that the article alleges that 48 of 52 students *Forbes* selected to interview stated that they cheated using Chegg Study, and that

*Forbes* uses the term "Chegging" to refer to cheating.  Answering further, Chegg states that the author of the *Forbes* article relied on anecdotal evidence from a select group of children of her friends and did not interview a representative sample of Chegg users, including those from low-income, first-generation, and minority backgrounds.  Despite Chegg's notifying the author of the shortcomings of her methods and providing access to blind studies that demonstrated different results, the author of the *Forbes* article published an incomplete profile based on her preconceived (and incorrect) notions of what Chegg does.  Chegg admits that Pearson's partial quotation of a study published in the *International Journal for Educational Integrity* is accurate but notes that it is incomplete and misleading.  Nowhere does the study state that "Chegg's purported academic integrity efforts are 'not working.'"  Answering further, Chegg states that the study measured only the number of questions posted on Chegg Study over a yearlong period and demonstrated no clear correlation between the observed increase in Chegg use and an increase in cheating or abuse of the Chegg platform.  Chegg also takes issue with the methodology of the research.  As the study author acknowledged, "the researchers did not subscribe to the Chegg service," so they would not have been in a position to determine (i) the full scope of questions that were asked and answered, (ii) whether those questions were related to exams or graded work (as opposed to homework), or (iii) which questions had solutions on the platform.  Chegg denies the remaining allegations in Paragraph 28.

29.     Chegg states that the allegations in Paragraph 29 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 29.

30.     Chegg admits that it does not produce its own textbooks with original end-of-chapter questions but denies the remaining allegations in Paragraph 30.

31.     Chegg admits in part and denies in part the allegations in Paragraph 31.  Chegg denies Pearson's characterization of Chegg Study's original, step-by-step solutions as "answers," but admits that Chegg provides step-by-step solutions to end-of-chapter questions from certain Pearson textbooks and that for each such textbook, Chegg Study generally provides such solutions to most of the questions in the textbook, as Chegg has done for a decade without objection by Pearson.  Chegg denies the remaining allegations in Paragraph 31.

32.     Chegg denies the allegations in Paragraph 32.

33.     Chegg denies the allegations in Paragraph 33.

34.     Chegg denies the allegations in Paragraph 34.

35.     Chegg admits in part and denies in part the allegations in Paragraph 35.  Chegg denies any "infringement" of Pearson's copyrights in any respect.  Chegg admits that, in some cases, Chegg provides solutions for more than 10,000 questions for a single Pearson textbook, and that, across the 150 Pearson titles listed in Exhibit A, Chegg provides approximately hundreds of thousands of solutions to Pearson's end-of-chapter textbook questions.  Chegg denies the remaining allegations in Paragraph 35.

36.     Chegg admits in part and denies in part the allegations in Paragraph 36.  Chegg admits that some step-by-step solutions on Chegg Study incorporate certain language contained in Pearson's end-of-chapter questions and that some others paraphrase certain language contained in end-of-chapter questions in Pearson textbooks.  Answering further, Chegg states that in order to teach students the concepts embodied in the end-of-chapter questions, some Chegg Study solutions necessarily may refer to elements of those questions.  Chegg denies that doing so constitutes any infringement of Pearson's copyright or protectable expression.  Chegg denies the remaining allegations in Paragraph 36.

37.     Chegg admits in part and denies in part the allegations in Paragraph 37.  Chegg admits that some of Pearson's end-of-chapter questions include "fictitious fact patterns."  Chegg admits that some step-by-step solutions on Chegg Study incorporate certain language contained in Pearson's end-of-chapter questions and that some others paraphrase certain language contained in end-of-chapter questions in Pearson textbooks.  Answering further, Chegg states that in order to teach students the concepts embodied in the end-of-chapter questions, some Chegg Study solutions necessarily may refer to elements of those questions.  Chegg denies that doing so constitutes any infringement of Pearson's copyright or protectable expression.  Chegg denies the remaining allegations in Paragraph 37.

38.     Chegg admits that Pearson's quotation of the Chegg Study solution for the indicated question is accurate, but notes that the quotation is incomplete and misleading.  The Complaint uses ellipses to omit Chegg's original work product from the quotation.  Chegg Study goes on to provide an original, step-by-step solution to the textbook question.  Chegg denies the remaining allegations in Paragraph 38.

39.     Chegg admits that Pearson's quotation of the Chegg Study solution for the indicated question is accurate, but notes that the quotation is incomplete and misleading.  The Complaint uses ellipses to omit Chegg's original work product from the quotation.  Chegg Study goes on to provide an original, step-by-step solution to the textbook question.  Chegg denies the remaining allegations in Paragraph 39.

40.     Chegg admits that Pearson's quotation of the Chegg Study solution for the indicated question is accurate, but notes that the quotation is incomplete and misleading.  The Complaint uses ellipses to omit Chegg's original work product from the quotation.  Chegg Study goes on to

provide an original, step-by-step solution to the textbook question.  Chegg denies the remaining allegations in Paragraph 40.

41.     Chegg admits that Pearson's quotation of the Chegg Study solution for the indicated question is accurate, but notes that the quotation is incomplete and misleading.  The Complaint uses ellipses to omit Chegg's original work product from the quotation.  Chegg Study goes on to provide an original, step-by-step solution to the textbook question.  Chegg denies the remaining allegations in Paragraph 41.

42.     Chegg admits that Pearson's quotation of the Chegg Study solution for the indicated question is accurate, but notes that the quotation is incomplete and misleading.  The Complaint uses ellipses to omit Chegg's original work product from the quotation.  Chegg Study goes on to provide an original, step-by-step solution to the textbook question.  Chegg denies the remaining allegations in Paragraph 42.

43.     Chegg denies the allegations in Paragraph 43.

44.     Chegg denies Pearson's characterization of videos available on Chegg Study as "video answers," but admits that Chegg has posted instructional videos on Chegg Study that teach students, step-by-step, how to solve not only the end-of-chapter questions from the textbooks, but also other questions of the same type.  Chegg denies that such instructional videos infringe Pearson's copyrights in any respect.  Chegg denies the remaining allegations in Paragraph 44.

45.     Chegg admits that Question 6 from Chapter 1 of CAMPBELL BIOLOGY includes the indicated language.  Chegg admits that a corresponding Chegg Study video repeated language from the question.  Answering further, Chegg states that such use of the question text in an instructional video for the pedagogical purposes of teaching students the concepts embodied by

the question and assisting them to understand their homework constitutes a fair use and is not an infringement of copyright.  Chegg denies the remaining allegations in Paragraph 45.

46.    Chegg admits that the screenshot excerpted at Paragraph 46 was part of a video available on Chegg Study and admits that it contains language from the indicated textbook question.  Answering further, Chegg states that such use of the question text in an instructional video for the pedagogical purposes of teaching students the concepts embodied by the question and assisting them to understand their homework constitutes a fair use and is not an infringement of copyright.  Chegg denies the remaining allegations in Paragraph 46.

47.    Chegg denies that for every solution on Chegg Study, the experts who prepared solutions obtained or had in their possession copies of all of Pearson's textbooks.  Chegg answers further that, in conjunction with the License Agreement, from 2016 through 2021, Pearson itself provided copies of the questions in many Pearson textbooks to Chegg with the express understanding that Chegg had already created or would create solutions to Pearson textbook questions and display the text of those questions in conjunction with the solutions on Chegg Study.

48.    Chegg denies the allegations in Paragraph 48.  Answering further, Chegg states that the Chegg experts who prepare the original, step-by-step solutions to textbook questions that appear on Chegg Study do not refer to or rely on the textbooks, rather than simply the problems to which they provide solutions, and the guidelines Chegg provides to those experts require all work done by them to be original.

49.    Chegg states that the allegations in Paragraph 49 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 49.

50.    Chegg denies the allegations in Paragraph 50.

51.    Chegg states that the allegations in Paragraph 51 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 51.

52.    Chegg states that the allegations in Paragraph 52 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies those allegations.   Answering further, Chegg states that, contrary to the Complaint's allegation that Chegg was not authorized to use end-of chapter questions, the parties' License Agreement provided exactly that: from no later than April 26, 2016 until at least May 31, 2021, Pearson expressly authorized Chegg to display the text of Pearson end-of-chapter questions in conjunction with Chegg's original, step-by-step solutions.  Before that time period, Chegg had also provided solutions for at least five years, without complaint or a license.  And following termination of the License Agreement, the agreement also still permits Chegg to continue to display question text along with Chegg's solutions on Chegg Study to any Chegg Study subscriber whose membership predates May 31, 2021.

53.    Chegg denies the allegations in Paragraph 53.

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST CLAIM FOR RELIEF**
### **Direct Copyright Infringement—17 U.S.C. § 106(1)**
### **Unauthorized Reproduction**

54.    Chegg incorporates and restates its answers to Paragraphs 1 through 53 as if fully set forth herein.

55.    Chegg states that the allegations in Paragraph 55 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     Chegg denies the allegations in Paragraph 56.  Answering further, Chegg states that Pearson expressly authorized Chegg under the License Agreement to display Pearson end-of-chapter questions on Chegg Study from no later than April 26, 2016 until at least May 31, 2021, and that agreement permits Chegg to continue to display those questions to legacy subscribers (i.e., those with a subscription prior to termination) following the termination of the license.

57.     Chegg states that the allegations in Paragraph 57 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies those allegations.  Answering further, Chegg states that Pearson expressly authorized Chegg under the License Agreement to display Pearson end-of-chapter questions on Chegg Study from no later than April 26, 2016 until at least May 31, 2021, and that agreement permits Chegg to continue to display those questions to legacy subscribers following the termination of the license.

58.     Chegg denies the allegations in Paragraph 58.

59.     Chegg denies the allegations in Paragraph 59.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND CLAIM FOR RELIEF
**Direct Copyright Infringement—17 U.S.C. § 106(2)**
**Unauthorized Derivative Work**

60.     Chegg incorporates and restates its answers to Paragraphs 1 through 53 as if fully set forth herein.

61.     Chegg states that the allegations in Paragraph 61 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.

62.     Chegg states that the allegations in Paragraph 62 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 62.

63.     Chegg states that the allegations in Paragraph 63 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 63.

64.     Chegg denies the allegations in Paragraph 64.

65.     Chegg denies the allegations in Paragraph 65.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD CLAIM FOR RELIEF**
**Direct Copyright Infringement—17 U.S.C. § 106(3)**
**Unauthorized Distribution**

66.     Chegg incorporates and restates its answers to Paragraphs 1 through 53 as if fully set forth herein.

67.     Chegg states that the allegations in Paragraph 67 are legal conclusions to which no response is required, but to the extent a response is deemed required, Chegg denies the allegations in Paragraph 67.

68.     Chegg states that the allegations in Paragraph 68 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations in Paragraph 68.  Answering further, Chegg states that the Copyright Act, 17 U.S.C. § 106(3), makes it unlawful to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," that "Copies" are defined in Section 101 of the Copyright Act as "material objects, other than phonorecords . . . ." and that no such distribution in material objects or phonorecords is alleged in the Complaint.

69.     Chegg states that the allegations in Paragraph 69 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the allegations.

70.     Chegg states that the allegations in Paragraph 70 are legal conclusions to which no response is required, but to the extent a response may be deemed required, Chegg denies the

allegations in Paragraph 70.  Answering further, Chegg states that the Copyright Act, 17 U.S.C. § 106(3), makes it unlawful to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," that "Copies" are defined in Section 101 of the Copyright Act as "material objects, other than phonorecords . . . ." and that no such distribution in material objects or phonorecords is alleged.

71.     Chegg denies the allegations in Paragraph 71.

72.     Chegg denies the allegations in Paragraph 72.

## RESPONSE TO "PRAYER FOR RELIEF"

Chegg denies that Pearson is entitled to any of the requested relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

Chegg asserts the following defenses to Pearson's claims.  The General Response above is incorporated in these defenses by reference as if fully set forth herein.  By asserting such defenses, or designating a defense as an "affirmative defense," Chegg does not admit that it has the burden of proving the matter asserted.

## FIRST AFFIRMATIVE DEFENSE

### Fair Use

Pursuant to 17 U.S.C. § 107, and considering the relevant factors, any use of Pearson's asserted copyrighted works by or through Chegg's services constitutes fair use.

Therefore, any use of Pearson's end-of-chapter questions by Chegg or through Chegg's services is not an infringement of copyright.  All legal and equitable relief Pearson seeks is barred by the doctrine of fair use.

## SECOND AFFIRMATIVE DEFENSE

### Copyright Misuse

By filing the Complaint, demanding that Chegg remove all of its independently created step-by-step solutions for questions appearing in Pearson textbooks, and alleging that Chegg has infringed Pearson's copyright by solving Pearson questions, Pearson is improperly seeking to leverage any copyright it owns in textbooks to obtain a monopoly over solutions to its textbook questions, which is a monopoly beyond the scope of exclusive rights conferred under the Copyright Act.

Therefore, all legal and equitable relief Pearson seeks is barred by the doctrine of copyright misuse during the period of Pearson's misuse.

### THIRD AFFIRMATIVE DEFENSE

#### Express License

Under the License Agreement, Pearson licensed to Chegg the text of the end-of-chapter questions from many textbooks that are the basis of Pearson's claims.

Therefore, the legal and equitable relief Pearson seeks is barred for part or all of the relevant time period because it was expressly permitted by license.

### FOURTH AFFIRMATIVE DEFENSE

#### Laches

As of approximately 2010, Pearson was aware of Chegg's practice of displaying on its website original solutions to end-of-chapter questions from Pearson's textbooks.  Pearson never complained about Chegg's practice and never asked Chegg to remove the solutions from the Chegg website on the ground that they infringed Pearson's copyright until February 2021.  To the contrary, from no later than April 26, 2016 until at least May 31, 2021 Pearson affirmatively licensed Chegg to use and display the end-of-chapter questions next to Chegg's original step-by-step solutions, without ever contending that Chegg's original solutions required a license until 2021.

In reliance upon Pearson's conduct, Chegg expended considerable time and investment in the Chegg Study platform, and millions of students have come to rely on Chegg Study and the availability of step-by-step solutions to help them learn.  Pearson's delay was unreasonable and prejudicial to Chegg.

Therefore, Pearson's request for injunctive or other equitable relief on all of its claims is barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

### Equitable Estoppel/Acquiescence

As of approximately 2010, Pearson knew or should have known of Chegg's practice of displaying on its website original solutions to questions in Pearson's textbooks.

Pearson not only tolerated Chegg's practices, but in fact expressed approval of them, by, among other things, licensing to Chegg certain of its textbook questions so that Chegg could display those questions' text next to the corresponding solutions on the Chegg Study platform. The License Agreement does not mention licensing of solutions to questions in Pearson textbooks because neither Chegg nor Pearson ever understood or contended that Pearson had any copyright in solutions written by Chegg to questions in its textbooks.  In fact, the License Agreement expressly acknowledges in the recitals that Chegg "has developed websites that provide online homework help questions and solutions to students."

Pearson intended that Chegg would act on its representations that Chegg was permitted to post original solutions to Pearson textbook questions.

It was not until February 2021, at the earliest, over a decade after Chegg began creating and providing students solutions to problems in Pearson textbooks, that Pearson first demanded that Chegg remove from Chegg Study its original solutions to Pearson textbook questions on the ground that they infringed Pearson's copyright.

During that decade, in reliance upon Pearson's conduct, Chegg expended considerable time and investment in the Chegg Study platform, and millions of students have come to rely on Chegg Study and the availability of step-by-step solutions to help them learn.  Chegg was prejudiced by its reliance on Pearson's conduct.

Therefore, all legal and equitable relief Pearson seeks is barred by the doctrine of equitable estoppel or acquiescence.

### SIXTH AFFIRMATIVE DEFENSE

### Unprotectable Expression

To the extent Chegg has copied all or portions of any end-of-chapter questions for which there is a limited number of ways to express the concepts therein, or where the copied materials embody or are necessary to explain facts, ideas, concepts or principles that are not copyrightable subject matter, any legal and equitable relief Pearson seeks is barred because the claim is based on expression that is unprotectable under copyright.

### SEVENTH AFFIRMATIVE DEFENSE

### *De Minimis* Copying

Any copying by Chegg of any protectable expression is *de minimis* as compared to the copyrighted works as a whole, and all legal and equitable relief Pearson seeks is barred on that basis.

### EIGHTH AFFIRMATIVE DEFENSE

### Digital Millennium Copyright Act

To the extent that Pearson's claims were intended to pertain to material made available, transmitted, or stored by or at the direction of a person other than Chegg, or infringing material or infringing activity referred or linked by Chegg, Pearson would not be entitled to legal or equitable relief sought because Chegg qualifies for the limitations on liability set forth in 17 U.S.C. § 512.

## NINTH AFFIRMATIVE DEFENSE

### Statute of Limitations

The statute of limitations, 17 U.S.C. § 507(b), bars Pearson's claims for legal relief to the extent Pearson alleges liability for instances of alleged copyright infringement that occurred more than three years before Pearson filed its Complaint in this matter.

## TENTH AFFIRMATIVE DEFENSE

### Unknowing Infringement

Chegg was not aware, and had no reason to believe, that its alleged acts constituted an infringement of a copyright, and accordingly, any statutory damages should be reduced pursuant to 17 U.S.C. § 504(c)(2).

## ELEVENTH AFFIRMATIVE DEFENSE

### Implied License

To the extent that Pearson's claims are not barred due to an express license as described above, the legal and equitable relief Pearson seeks as to part or all of the relevant time period is nevertheless barred under the doctrine of implied license.

## TWELFTH AFFIRMATIVE DEFENSE

### Unclean Hands

Pearson's claims are barred, in whole or in part, by the doctrine of unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE

### Failure to State a Claim

The Complaint fails to state a claim on which relief can be granted.

## RESERVATION OF RIGHTS

Chegg reserves the right to add any additional defenses that discovery may reveal or as the circumstances warrant.

## DEMAND FOR JURY TRIAL

Chegg requests a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, having fully answered, Chegg respectfully requests that the Court enter judgment in favor of Chegg and against Pearson as follows:

A.  Holding that Pearson is not entitled to any relief, whether legal, equitable, or otherwise;

B.  Awarding Chegg its full costs and a reasonable attorney's fee as part of the costs pursuant to 17 U.S.C. § 505 in connection with this action; and

C.  Granting such other relief to Chegg as the Court may deem just and proper.

Dated:  November 19, 2021                    Respectfully Submitted,


By:  *s/Marie L. Mathews*
     Marie L. Mathews
     Shirley U. Emehelu, Esq.
     CHIESA SHAHINIAN & GIANTOMASI PC
     One Boland Drive
     West Orange, NJ 07052
     Telephone: (973) 530-2127
     Email: mmathews@csglaw.com
            semehelu@csglaw.com

     Michael Sheetz (*pro hac vice*)
     COOLEY LLP
     500 Boylston Street
     Boston, MA 02116
     Telephone: (617) 937-2300
     Email: msheetz@cooley.com

     John Paul Oleksiuk (*pro hac vice*)
     COOLEY LLP
     1333 2nd St., Suite 400
     Santa Monica, CA 90401
     Telephone: (310) 883-6400
     Email: jpo@cooley.com

     Stephanie Schuyler (*pro hac vice*)
     COOLEY LLP
     55 Hudson Yards
     New York, NY 10001
     Telephone: (212) 479-6000
     Email: sschuyler@cooley.com

     Laurence Pulgram (*pro hac vice* forthcoming)
     David Hayes (*pro hac vice* forthcoming)
     FENWICK & WEST LLP
     555 California St.
     San Francisco, CA 94104
     Telephone: (415) 875-2300
     Email: lpulgram@fenwick.com
            dhayes@fenwick.com

     *Attorneys for Defendant Chegg, Inc.*

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

Upon information and belief, the matter in controversy is not the subject of any other action pending in any court, and is not the subject of any pending arbitration or administrative proceeding.  I am not currently aware of any other party who should be joined in this action.


## **CERTIFICATION OF SERVICE**

I hereby certify that on this day, a true and correct copy of the foregoing Answer to Plaintiff's Complaint has been filed electronically and is available for viewing and downloading from the ECF system and was served via electronic notification upon all counsel of record.

Dated:  November 19, 2021

Respectfully Submitted,

By:  _s/Marie L. Mathews_

Marie L. Mathews
Shirley U. Emehelu, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2127
Email: mmathews@csglaw.com
         semehelu@csglaw.com

Michael Sheetz (*pro hac vice*)
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Email: msheetz@cooley.com

John Paul Oleksiuk (*pro hac vice*)
COOLEY LLP
1333 2nd St., Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Email: jpo@cooley.com

Stephanie Schuyler (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Email: sschuyler@cooley.com

Laurence Pulgram (*pro hac vice* forthcoming)
David Hayes (*pro hac vice* forthcoming)
FENWICK & WEST LLP
555 California St.
San Francisco, CA 94104
Telephone: (415) 875-2300
Email: lpulgram@fenwick.com
         dhayes@fenwick.com

*Attorneys for Defendant Chegg, Inc.*