# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**PEARSON EDUCATION, INC.,**

    **Plaintiff,**

  v.

**CHEGG, INC.,**

    **Defendant.**

Case No. 21–cv–16866–EP–ESK

**OPINION AND ORDER**

**KIEL, U.S.M.J.**

    **THIS MATTER** having come before the Court on the motion of plaintiff Pearson Education, Inc. (Pearson) for leave to file an amended complaint (Motion To Amend) to: (1) add Bedford, Freeman & Worth Publishing Group, LLC, d/b/a Macmillan Learning (Macmillan) as an additional plaintiff; and (2) assert an additional claim on behalf of both Pearson and Macmillan (ECF No. 56); and defendant Chegg, Inc. (Chegg) having filed opposition to the Motion To Amend (ECF No. 62); and Pearson having filed a reply (ECF No. 64) and further supplemental authority (ECF No. 70); and the Court having conducted a conference on September 20, 2022, which included oral argument on the Motion To Amend in part; and the Court finding:

    1.    As set forth in the complaint filed by Pearson on September 13, 2021, Pearson "publishes ... educational textbooks ... span[ning] ... all academic subject areas" that include "end-of-chapter questions." (ECF No. 1 p.2.) Pearson alleges Chegg, which "is a company that sells textbook answers" through a website, is infringing Pearson's copyrights by selling answers to questions provided in Pearson's textbooks. (*Id.* p.3.) Pearson further alleges that:

> Even where the Chegg ... answers do not repeat Pearson's questions verbatim or paraphrase them, those answers are based upon, and are necessarily derived from, Pearson's questions and other protected expression from Pearson's textbooks. The answers are a byproduct of the questions, and a result of the creativity set forth in the questions. Further, by providing answers to the questions, Chegg lessens the value of those questions as pedagogical tools and

> violates Pearson's right to derive and market answers to the questions.

(*Id.* p. 15.) Pearson alleges 150 instances where Chegg has infringed its copyrights, which according to Pearson "represents just a fraction of Chegg's infringement." (*Id.* pp. 9, 12.)

2. On June 29, 2022, more than nine months after Pearson brought this case, Pearson filed the Motion To Amend to add Macmillan as an additional plaintiff and to permit Macmillan to assert its own infringement claims against Chegg. (ECF No. 56.) In support of the Motion To Amend, Pearson argued that: (a) Macmillan is an "educational publishing compan[y] … [that] publishes a wide range of … educational textbooks … [that] includ[e] … unique sets of end-of-chapter questions"; (b) Chegg is infringing Macmillan's copyrights by offering answers to Macmillan's textbook questions; (c) Pearson's infringement claims and Macmillan's proposed infringement claims against Chegg concerning the offering of textbook answers "aris[e] from the very same unlawful conduct, leading to the very same violations of federal copyright law"; and (d) "Pearson and Macmillan['s] … claims present many of the same questions of law and fact." (ECF No. 56-1 pp. 7, 10, 12; *see* ECF No. 64 p. 6 (asserting "Chegg is unhappy that a second publisher has decided to assert copyright claims against it"); *id.* p. 9 (arguing "both publishers assert the same … claims for violations of federal copyright law, arising out of the same Chegg pattern and practice of selling students access to its Chegg … website").) Whereas Pearson alleges 150 instances of infringement of its copyrights by Chegg, Macmillan alleges 25 instances of infringement by Chegg. (ECF No. 56 pp. 16, 21.)

3. Chegg argues in opposition that granting the Motion To Amend would be prejudicial, as Chegg would then be forced to defend against two separate sets of claims from two different plaintiffs within one case. (ECF No. 62 pp. 7, 12, 19.) In addition, Chegg argues that it will assert defenses and engage in motion practice that will raise factual and legal issues that do not apply in common to both Pearson and Macmillan, and that adding Macmillan's claims here will undoubtedly lead to hopeless complications in this litigation. For instance, Chegg argues that it would assert venue and personal jurisdiction defenses against Macmillan for attempting to pursue its claims in New Jersey, as Chegg is based in California and Macmillan is based in New York, and that these issues have nothing to do with Pearson's claims against it. (*Id.* pp. 7, 16, 17.) In addition, Chegg argues that it entered into a licensing agreement with Pearson from 2016 to 2021, that this previous relationship provides Chegg with a viable defense against Pearson's claims, and that the issues related to this business relationship will hold no relevance for Macmillan's claims against Chegg. (*Id.* pp. 12, 20.)

4. A determination as to whether to grant leave to file an amended pleading is discretionary. *Dooley v. Wetzel*, 957 F.3d 366, 376 (3d Cir. 2020). However:

> Under Federal Rule of Civil Procedure [(Rule)] 15(a), leave to amend shall be freely given when justice so requires, and [the Third Circuit has] consistently adopted a liberal approach to the allowance of amendments. Even when a party is late in moving for leave to amend, [the Third Circuit has] expressed a preference for allowance of the amendment, so long as the opposing party is not prejudiced by the delay. It is well-settled that *prejudice to the nonmoving party is the touchstone for the denial of an amendment.*

*DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369–70 (3d Cir. 2020) (internal quotation marks and citations omitted)(emphasis added); *see Shine v. Bayonne Bd. of Educ.*, 633 F.App'x 820, 822 (3d Cir. 2015) (holding that leave to amend a pleading should be denied when there is, among other things, "undue prejudice to the opposing party by virtue of allowance of the amendment").

5. A review of the Westlaw and Lexis databases containing all dockets of the federal district courts reveals that Pearson and Macmillan have been co-plaintiffs in at least 21 infringement cases (Twenty-One Cases) since 2012. Pearson and Macmillan filed 19 of those cases together in the first instance (Nineteen Jointly Filed Cases). Of the Nineteen Jointly Filed Cases, 12 cases were brought in the Southern District of New York:

*Bedford, Freeman & Worth Publ'g Grp., LLC v. Doe No. 1*, S.D.N.Y. Case No. 21-06691;

*Pearson Educ., Inc. v. Doe No. 1*, S.D.N.Y. Case No. 21-03486;

*Elsevier Inc. v. 7yec.com*, S.D.N.Y. Case No. 20-08438;

*McGraw Hill, LLC v. Doe No. 1*, S.D.N.Y. Case No. 20-06368;

*Cengage Learning, Inc. v. Doe No. 1*, S.D.N.Y. Case No. 20-00769;

*McGraw Hill LLC v. Doe No. 1*, S.D.N.Y. Case No. 20-00356;

*Bedford, Freeman & Worth Publ'g Grp., LLC v. Doe No. 1*, S.D.N.Y. Case No. 19-10524;

*Pearson Educ., Inc. v. Doe No. 1*, S.D.N.Y. Case No. 19-07642;

*Pearson Educ., Inc. v. Labos*, S.D.N.Y. Case No. 19-00487;

*Cengage Learning, Inc. v. Doe No. 1*, S.D.N.Y. Case No. 18-07382;

*Pearson Educ., Inc. v. Doe No. 1*, S.D.N.Y. Case No. 18-07380; and

*Pearson Educ., Inc. v. Boundless Learning Inc.*, S.D.N.Y. Case No. 12-01986.

6. Two of the Nineteen Jointly Filed Cases were brought in the Northern District of Illinois. *See McGraw Hill LLC v. Radius Int'l, Inc.*, N.D. Ill. Case No. 21-04325; *Cengage Learning, Inc. v. Morena for Int'l Trading,* N.D. Ill. Case No. 19-01727. The five remaining cases from the Nineteen Jointly Filed Cases were brought in district courts in Kentucky, Louisiana, Maryland, Pennsylvania, and Virginia. *See Pearson Educ., Inc. v. Rentu.Com, LLC*, E.D. Ky. Case No. 18-00040; *Elsevier Inc. v. Adams*, W.D. La. Case No. 19-00417; *Pearson Educ., Inc. v. BookHolders LLC*, D. Md. Case No. 21-00594; *Pearson Educ., Inc. v. Mofield*, E.D. Pa. Case No. 19-04605; *Bedford, Freeman & Worth Publ'g Grp., LLC v. Shopify Inc.*, E.D. Va. Case No. 21-01340.

7. None of the Nineteen Jointly Filed Cases were brought in the District of New Jersey. It also appears that the defendants in the Nineteen Jointly Filed Cases neither challenged the efforts by Pearson and Macmillan to assert their claims together, nor sought to sever Pearson's and Macmillan's claims in those cases. Thus, the manner in which the respective district courts managed the Nineteen Jointly Filed Cases provides no support for Pearson's attempt to join Macmillan to a District of New Jersey case several months after the case has been initiated.

8. Pearson may only reasonably rely on two cases among the Twenty-One Cases in which Macmillan sought to join after those two cases had been pending for some time. But the circumstances in those two cases, both of which were not brought in the District of New Jersey, are distinguishable from our case. The district court in *Pearson Educ., Inc. v. Doe No. 1*, S.D.N.Y. Case No. 17-00203, granted Pearson's motion to amend a complaint to add Macmillan as a plaintiff to a five-year-old case in an opinion and order dated March 31, 2022. *Id.* ECF No. 221. However, that case presented an unusual set of circumstances. The Southern District of New York found that the defendant objecting to Macmillan's addition to that case would not be prejudiced, as the amendment "ha[d] the effect of setting aside [the objecting defendant's] default [and the default judgment entered against it], a seemingly beneficial outcome for the [objecting defendant]." *Id.* p.8. No comparable result would occur in our case, and no similar benefit would accrue to Chegg. The Southern District of New York's holding has no relevance here.

9. In an opinion and order dated March 12, 2019, the district court in *Pearson Educ., Inc v. C&N Logistics, Inc.*, M.D. Tenn. Case No. 18-00438, granted Pearson's motion to amend a complaint to add Macmillan as a plaintiff to a ten-month-old case. *Id.* ECF No. 61. That case raised claims concerning the defendants' distribution of counterfeit textbooks. Out of the three defendants

4

named in that case, only one defendant filed opposition to the motion to amend, and that opposition — in contrast to Chegg's opposition to the Motion To Amend — was sparse and solely argued that the proposed amendment was futile. *Id.* p.4. Further, even though that defendant was a Georgia citizen, he was alleged to have "a business association" with the main defendant corporation and the defendant president of the corporation that was linked to the alleged infringing conduct, and both of those latter defendants were Tennessee citizens. *Id.* ECF No. 1 ¶¶10–12. Thus, any personal jurisdiction and venue defenses would be unlikely to have merit in a federal district court situated in Tennessee.

     10.    In our case, potential personal jurisdiction and venue defenses may be raised by Chegg as to any claims asserted by Macmillan against it because: (a) Chegg is based in California; (b) Chegg is alleged to be acting on its own and not with a defendant based in New Jersey; (c) Macmillan is based in New York; and (d) due to the aforementioned three factors, the connection of Macmillan's proposed claims to New Jersey may be precarious. In light of a potentially meritorious motion filed by Chegg in New Jersey either to dismiss the claims asserted by Macmillan based on lack of personal jurisdiction, or to transfer those claims to California (where Chegg is based) or New York (where Macmillan is based and presumably felt the effects of Chegg's alleged misconduct), I find the Middle District of Tennessee's holding has no relevance to our case.

     11.    Based upon the papers that have been filed by the parties so far, it is apparent that Pearson's current claims and Macmillan's proposed claims will require: (a) separate motion practice based upon the merits of the claims, as well as upon the affirmative defenses rooted in personal jurisdiction and venue; (b) separate discovery demands and separate discovery dispute applications, which will be frequent occurrences if the history of the litigation between Pearson and Chegg is any indication; (c) individualized causation analyses, individualized damages assessments, and individualized relief, as Pearson and Macmillan are separate companies; (d) the entry of separate judgments, *i.e.*, one for Pearson and one for Macmillan if they succeed on their respective claims against Chegg; (e) separate appeals from those separate judgments; and (f) other separate activity.

     12.    Pearson and Macmillan are placing an undue burden on the judiciary and the Clerk of the Court by attempting to bring their separate claims under one civil action number. *See Hannah v. Johnson & Johnson Inc.*, No. 18-01422, 2020 WL 3497010, at *6 (D.N.J. June 29, 2020) (holding that permitting second plaintiff to proceed jointly with first plaintiff in an ongoing case would be ill-advised, even though second plaintiff's claims arose out of same alleged misconduct as first plaintiff's claims, as jurisdictional and venue issues abounded between second plaintiff and current defendant). This set of circumstances

counsels against granting the Motion To Amend and permitting Macmillan to pursue its claims as part of this case.[1]

13. As Chegg also persuasively points out in opposition, Chegg previously had a licensing agreement with Pearson, but Chegg did not have such an agreement with Macmillan. (ECF No. 62 pp. 12, 20; *see* ECF No. 72 p. 12 (Chegg asserting that "there's a license agreement, which is material to our defense against Pearson," and "[t]here's no similar license agreement with Macmillan").) Chegg's defense to Pearson's claims will refer to this previous agreement, and Chegg's separate defense to Macmillan's potential claims in the absence of any such previous agreement will be fundamentally different.

14. Furthermore, Macmillan asserts 25 instances in which Chegg has infringed its works (ECF No. 56 p. 16; ECF No. 56-1 p. 7), whereas Pearson alleges that 150 of its works have been infringed by Chegg (ECF No. 1 p. 12). Completely different copyrights that are separately held by Pearson and by Macmillan will be in issue. As Pearson itself mentions as part of a larger sweeping argument, "Pearson and Macmillan … each have different copyrighted works that have been infringed by Chegg." (ECF No. 56-1 p. 11.) As a result, the facts underlying Pearson's claims and Macmillan's claims will lack commonality.

15. Pearson fares no better to the extent that it relies upon the concept of permissive joinder in its effort to add Macmillan to this case. (*Id.* p. 10.) The relevant Rule provides:

> (a) Persons Who May Join or Be Joined.
>
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed.R.Civ.P. 20(a)(1).

---

[1] As mentioned during oral argument in the context of the different defenses that Chegg would assert against Pearson and Macmillan, and the confusion that might result if they were to proceed together in one case, the Court must be concerned about the difficulty of unscrambling the egg once the egg has been scrambled. (ECF No. 72 p. 15.)

16. The standard for permissive joinder is not met in this case on the face of Rule 20 itself. First, Pearson is not asserting claims that arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims that will be asserted by Macmillan. As Pearson readily admits, 150 of its works have allegedly been infringed by Chegg, whereas 25 completely different works held by Macmillan have allegedly been infringed by Chegg. Second, the questions of law and of fact to be addressed as to Pearson's claims will be different from Macmillan's proposed claims because there are different copyrights owned by different parties at issue, and each copyright will be required to be assessed. For instance, a finding that Chegg has infringed one copyright held by Pearson as it relates to one answer published by Chegg would not necessarily infer that Chegg infringed one different copyright held by Macmillan as to a completely different published answer. Where different copyrights have allegedly been infringed by Chegg, even if the manner of infringement is the same in each instance, the separate claims should not be joined "[b]ecause each [p]laintiff seeks … [its] own relief," and thus Chegg:

> will likely raise myriad factual and legal defenses to each [p]laintiff's respective claims…. Plaintiffs will have to submit their own proofs that evidence an injury proximately caused by … [Chegg's conduct]. Adjudicating each Plaintiff's claims will likely involve separate discovery, separate dispositive motions, and separate trials. Once litigation commences in earnest, the respective adverse parties will almost certainly proceed at different speeds when it comes to preparing their cases and defenses.

*Acosta v. Anthem Lounge*, No. 18-17710, 2019 WL 5304156, at *5 (D.N.J. Oct. 18, 2019), *adopting report and recommendation*, 2020 WL 10139483 (D.N.J. June 11, 2020).

17. Therefore, I reject Pearson's argument that its infringement claims and Macmillan's infringement claims are "logically related." (ECF No. 56-1 p.10 (citing *Fernandez v. Borough of Roseland*, No. 20-00103, 2021 WL 3930718, at *9 (D.N.J. Sept. 2, 2021)).) I will not permit Pearson to join Macmillan to this case pursuant to Rule 20(a).

18. To the extent that Pearson argues that Macmillan should be permitted to intervene in this case pursuant to Rule 24(b) (ECF No. 56-1 p.18), Pearson again does not meet the standard as set forth on the face of the relevant Rule. Rule 24(b) provides that "the court may permit anyone to intervene who … has a claim … that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). As I have already addressed in the context of Rule 15(a) and Rule 20(a), the questions of law and fact that will be raised as to

7

Macmillan's proposed claims will not necessarily be the same as those raised for Pearson's current claims. In addition, I find that permitting Macmillan to intervene at this juncture "will unduly … prejudice the adjudication of the original parties' rights," *i.e.*, Chegg. Fed.R.Civ.P. 24(b)(3). As I have already discussed, Chegg may possess meritorious jurisdictional and venue defenses as to Macmillan's proposed claims that it does not possess as to Pearson's claims. To force Chegg to selectively litigate different defenses against two separate plaintiffs within the context of one case would be prejudicial. The litigants and the Court would be better served if Macmillan were to bring a separate case, which could then be jointly case managed.

19. A court possesses the "inherent power to control its docket so as to promote fair and efficient adjudication" of the cases pending on the docket. *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 702 (3d Cir. 1991); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (discussing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In view of a court's inherent power to "control the disposition of the causes on its docket with economy of time and effort … [not only] for counsel … and for litigants," but "for itself" as well, I find it would be best to direct Macmillan to bring its own case, rather than to permit Pearson to join Macmillan to this case. *Picozzi v. Connor*, No. 12-04102, 2012 WL 2839820, at *6 (D.N.J. July 9, 2012) (declining to permit a plaintiff to join to his case several other plaintiffs with similar claims).

20. There is no cause to permit Pearson to join Macmillan to this case when the "claims are merely parallel," and "answering the question of whether one plaintiff's [claim has merit] … will not answer the same question for the [other plaintiff]." *See Wicks v. Anderson*, No. 09-01084, 2010 WL 4916712, at *5 (M.D. Pa. Oct. 13, 2010) (magistrate judge recommending that plaintiff's request to add additional plaintiffs to an active case be denied), *adopting report and recommendation*, 2010 WL 4916382 (E.D. Pa. Nov. 24, 2010), *aff'd sub nom.*, 456 F.App'x 112 (3d Cir. 2012). Simply because my scheduling order permitted motions to add new parties by a date certain, and even though Pearson timely filed the Motion To Amend (ECF No. 38), I am not compelled to grant a motion seeking such relief. The decision to do so remains within my discretion. However, should Macmillan file a separate case in the District of New Jersey, and should that case remain in the District of New Jersey, I will coordinate discovery, conferences, and other matters with Pearson's current case to the extent appropriate.

21. I also deny without prejudice the part of the Motion To Amend that concerns a proposed new infringement claim concerning "unauthorized display" (ECF No. 56-1 p.19) and clarifications to Pearson's existing claims. The

8

proposed new claim and the clarifications are drafted in such a way as to include Macmillan's proposed claims. Pearson did not provide a version of the proposed amended complaint that includes clarifications and a new proposed claim that pertain to Pearson alone for me to consider. (ECF No. 56 pp. 5–34.) I cannot parse out the parts of the proposed amended complaint that refer only to Pearson. However, Pearson will be granted leave to file a renewed motion to amend the complaint to assert the new claim and the clarifications on its own behalf. I hope the parties will confer and reach an agreement to consent to the proposed amendments only as to Pearson's claims.

Accordingly,

**IT IS** on this 7th day of **November 2022 ORDERED** that:

1. The Motion To Amend is **DENIED WITHOUT PREJUDICE**.

2. The Clerk is directed to terminate ECF No. 56.

3. Macmillan is granted leave to file a separate case against Chegg by November 28, 2022. Macmillan is directed to note in the civil cover sheet that the separate case is related to this case, to ensure: (a) the separate case is assigned to the same District Judge and Magistrate Judge for the purposes of coordination of discovery; and (b) that the statute of limitations period relates back to when the Motion To Amend was filed in this case.

4. Pearson may move again for leave to file an amended complaint to assert the proposed new claim and the clarifications of its existing claims on behalf of itself by November 28, 2022. Pearson is directed to abide by Local Rule 15.1 when filing its renewed motion. The parties are directed to confer and endeavor to stipulate to an amended complaint to the extent it concerns claims by Pearson alone against Chegg.

        */s/ Edward S. Kiel*
        **EDWARD S. KIEL**
        **UNITED STATES MAGISTRATE JUDGE**