CSG law

CHIESA SHAHINIAN & GIANTOMASI PC

105 Eisenhower Parkway Roseland, NJ 07068
csglaw.com

MARIE L. MATHEWS
Member
mmathews@csglaw.com

O  973.530.2099      F  973.325.1501

February 3, 2023

***Via ECF***
Honorable Edward S. Kiel, U.S.M.J.
United States District Court for the District of New Jersey
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Courtroom 8
Newark, NJ 07102

Re:    *Pearson Education, Inc. v. Chegg, Inc., 2:21-cv-16866 (EP-ESK)*

Dear Judge Kiel:

Pursuant to DNJ Local Rules 16.1 and 37.1 and paragraph 7 of the Court's Civil Case Management Order, the parties respectfully submit this joint letter. The parties met via videoconference on January 25, 2023 but were unable to resolve this dispute.  Their respective positions are set forth below.

**Chegg's Position:**

This firm, together with Cooley LLP, represents Defendant Chegg, Inc. ("Chegg") in this matter.  We write to address an argument regarding the scope of the claim of copyright registrations raised by counsel for Plaintiff Pearson Education, Inc. ("Pearson") for the first time during the December 5, 2022 hearing on the parties' October 17, 2022 joint letter regarding deficiencies in Pearson's production ("Joint Letter") (ECF No. 74) and to provide specific examples of additional problems evident from Pearson's copyright registrations that underscore the need for Pearson to provide discovery regarding both copyright ownership and the scope of the claim of its copyright

Error! Unknown document property name.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 2

registrations.[1]  As discussed more fully below, Pearson now has admitted that registrations were not

obtained for at least some of its previous textbook editions.  Such gaps are likely fatal to aspects of

Pearson's case, or at least they will have narrowing impacts on the scope of any claims Pearson can

maintain, given that (1) the asserted copyrighted registrations exclude prior editions from the scope

of the claim registered, (2) ownership by the plaintiff of a copyright registration covering the material

asserted is a requirement for bringing suit, and (3) timely registration affecting the burdens of proof

and ability to seek certain relief in this case.  Critically, the registrations Pearson produced to date

also identify third parties as the owners of prior editions of many of the textbooks at issue, among

other preexisting materials incorporated in those textbooks, raising additional questions regarding

who owns the material in those textbooks.  Accordingly, Chegg seeks critical discovery into copyright

ownership and the definitive scope of the claimed copyright registrations.

### A.  Pearson's admissions at the December 5, 2022 hearing.

During oral argument on Section IV of the parties' Joint Letter, Pearson's counsel admitted

that Pearson had never registered prior published editions of at least some of the textbooks listed on

Exhibit A to the Complaint (ECF No. 1).  In particular, Pearson's attorney acknowledged that "[t]here

are [a] handful [of the textbooks] where they weren't registered."  (Tr. 68:5).  Pearson's counsel

sought to minimize this lack of registration by claiming that later editions encompassed earlier ones.

(Tr. 68:13-69:2, stating "[b]ecause the fourth edition was registered, and that would cover everything

back to the second…").  Pearson's admission of failure to register copyrights at issue of certain

textbooks only underscores the pressing need in this case for discovery into what is and is not

---

[1] Relevant requests are: RFPs 4, 5, 9, 10, 11; Interrogatories 10, 11, 12 (ECF No. 68-1 at Exhibits A, B); Interrogatory 20 (ECF No. 68-2 at Exhibit J). These requests were raised in Section IV and V of the parties' Joint Letter.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 3

encompassed within copyright registrations that can be asserted in this case (a question already muddied by numerous questions regarding content ownership rights held by other companies and universities that employ the professor authors).

      **B.**  **Pearson cannot pursue claims premised on unregistered copyrights, and a failure to timely register asserted copyrights will affect the burden of proof and the scope of relief available.**

In order to prevail at trial, Pearson must establish that it owns the copyright in the end-of-chapter questions that were allegedly infringed by Chegg's provision of textbook solutions to those questions. *See Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir. 1990); 17 U.S.C. § 501 (ownership of copyright required for statutory standing). Moreover, Pearson was required to register its copyright claim covering the material at issue before bringing suit. *See Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, 586 U.S. __, 139 S. Ct. 881, 888–89 (2019); 17 U.S.C. § 411(a). A copyright registration covers a particular "claim" of copyrightable subject matter. 17 U.S.C. § 410(a).

The timing of registration is materially relevant to issues in this case. For example, the timing of copyright registrations affects the burdens of proof because a registration made within five years after first publication of the work is "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Moreover, the Copyright Act requires prompt registration of the claim in order to make the owner eligible to seek statutory damages and an award of attorney's fees. 17 U.S.C. § 412.

Moreover, limitations on the scope of a copyright registration are particularly relevant in a case like this involving numerous editions of textbooks. For example, when a new edition of a work is being published, the registration must identify what is "the additional material in the new edition

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 4

being covered by the copyright claim being registered."  17 U.S.C. § 409(9).  The U.S. Copyright

Office's *Compendium of U.S. Copyright Office Practices* (Third Edition) ("*Compendium*")[2],

explains:

> A registration for a work of authorship extends only to the new material that
> the author contributed to that work. It does not extend to any unclaimable
> material that may appear in that work. For purposes of registration,
> unclaimable material includes the following types of material:
>
> •      Previously published material.
> •      Previously registered material (including material that has been
> submitted for registration but has not been registered yet).
> •      Material that is in the public domain.
> •      Copyrightable material that is owned by a third party (i.e., an individual
> or legal entity other than the claimant who is named in the application).

*See Compendium* § 621 (available at https://www.copyright.gov/comp3/chap600/ch600-

examination-practices.pdf).  The Copyright Office requires that claimants such as Pearson disclaim

these four categories of material [pursuant to 17 U.S.C. § 409(9)] because the existence of

unclaimable material may be relevant to determining "[w]hether the certificate is entitled to certain

legal presumptions," [pursuant to 17 U.S.C. § 410(c)] "[w]hether the copyright owner is entitled to

certain legal remedies in an infringement dispute," [pursuant to 17 U.S.C. § 412] "[w]hether an

infringer may rely on certain defenses in an infringement dispute," [including those based on 17

U.S.C. § 411(a)] and whether other registration requirements have been satisfied.  *See Compendium*

§ 621.4.

---

2   The *Compendium* is the governing administrative manual for registrations issued by the U.S.
Copyright Office.  Pearson acknowledges below that the Compendium contains "expert guidance"
from the U.S. Copyright Office but takes issue with the persuasiveness of the Compendium, even
though the Supreme Court suggests that it merits deference and may have the "power to persuade."
*Georgia v. Pub. Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020).  Regardless, each of the substantive
points Chegg cites from in the *Compendium* is directly supported by the Copyright Act as cited herein.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 5

**C.** **Pearson's registrations raise red flags regarding copyright ownership, the scope of copyright claims, and Pearson's entitlement to remedies it seeks.**

The Compendium provides an example of how the copyright registration process works, directly refuting Pearson's arguments at the December 5, 2022 hearing:

> The Piecemeal Press submits an application for a textbook and states that the work was published on March 24, 2005. The deposit copies indicate that this is the second edition of this work and that the first edition was published in 2004. In the Material Excluded field the applicant states "previously published edition" to **exclude the previously published material from the claim**, and in the New Material Included field states "new text" to **limit the claim to the new material that appears in the second edition**. The registration specialist will register the claim.

*See Compendium* § 621.4 (emphasis added).  Material from previously published editions of Pearson's textbooks is simply not covered by the registrations for later editions—they cannot "save" the previously unregistered textbooks from Pearson's failure to meet timely registration requirements.

In addition to previously published material, nearly all of the copyright registrations produced by Pearson in this case also identify previously registered material and "third party text" in the fields under the "limitation of claim" section of the registration certificate.  *See, e.g.*, Ex. A (copyright registration for Campbell Biology, 11th Edition).  Pearson's copyright registrations confirm that a multitude of unclaimable material exists in those textbooks, but they describe only the general categories of such unclaimable material.  *See* Ex. A.; *Compendium* §§ 621.5 and 621.7.[3]

---

[3] Below, Pearson quotes *Ford Motor Co. v. Summit Motor Products, Inc.* for the proposition that "[c]ertificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity and ownership of **the material**."  930 F.2d 277, 290–91 (3d Cir. 1991) (emphasis added). This quote does not address the issue at hand, because it does not engage with the question of how to identify **what material** is **the material** covered by the registration.  The registration system would create nonsensical results if every registration were evidence of the registrant's ownership of unclaimable material contained in the work.  Rather, a timely registration is evidence of ownership of solely the material within the claim of registration.  Chegg seeks discovery that would enable the parties to determine the scope of that claim.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 6

       Pearson's position that it does not matter whether the material is new in the textbook edition being registered would lead to absurd results, making Pearson not subject to the limitations on remedies set forth in 17 U.S.C. § 412.  As explained in the House Report summarizing the timing eligibility requirements "section 412 [denies] any award of the special or 'extraordinary' remedies of statutory damages or attorney's fees where …, in the case of a published work, infringement commenced after publication and before registration (unless registration has been made within a grace period of three months after publication)."  H. R. Rep No. 94-1476, at 158 (1976).  Whenever Pearson registers copyrights after the grace period ends and after Chegg's alleged infringement began, Pearson is not eligible to seek statutory damages or an award of attorney's fees.  Here, the 11th edition of Campbell Biology was not registered until more than 3 months after first publication, so Chegg's commencement of providing solutions to questions prior to the effective date of registration for that edition makes Pearson ineligible for remedies it seeks in this case for infringement of questions first published in that edition.  *See* Ex. A (date of first publication October 19, 2016; effective date of registration August 14, 2017).  The same timing issue exists with regard to the 10th edition of Campbell Biology and many other works-in-suit.  Effectively, Pearson is arguing that Chegg cannot obtain discovery regarding Pearson's eligibility for the remedies that it is seeking in this case.

       Pearson argues below that the three-month deadline is irrelevant because "Chegg's infringement here is ongoing and continues to this day."  In doing so, Pearson improperly disregards the statutory requirement that the registration occur within three-months of first publication or prior to when the alleged infringement "commenced."  17 U.S.C. § 412.  *See, e.g.*, *Southern Credentialing Support Services, LLC v. Hammond Surgical Hospital LLC*, 946 F.3d 780, 782 (5th Cir. 2020) ("We

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 7

have interpreted section 412 to bar statutory damages even for a defendant's postregistration copying of a plaintiff's [work] if copying also occurred before registration.")[4]

In sum, Pearson cannot maintain claims for infringement of material it does not own, nor material that is beyond the scope of its registration claim.  Determining the scope of the registration claim is integral to assessing not only Pearson's compliance with the statutory prerequisite for filing suit in 17 U.S.C. § 411(a) and eligibility for remedies, but also what weight, if any, the certificates should carry in terms of evidence of Pearson's ownership of material it alleges to have been infringed. A registration can be *prima facie* evidence of ownership, but only for the claimed material, and such *prima facie* evidence can be rebutted.

**D.** **Pearson has not established that it is the owner of both derivative and pre-existing works, and documents produced by Pearson indicate it is not the owner of pre-existing works.**

Chegg should not have to accept Pearson's unsupported allegation that it owns preexisting material that appears in the derivative works registered in Pearson's name, nor should Chegg be foreclosed from taking discovery regarding copyright ownership, particularly in the face of contradictory evidence.

Below, Pearson argues that it can rely on a registration certificate relating to a derivative work to maintain an action for infringement based on Chegg's alleged infringement of the pre-existing work contained in the derivative work.  Putting aside the fact that Pearson cites no binding authority for this position, the authorities cited below by Pearson for this point all expressly *require* that the

---

[4] The case cited below by Pearson to contradict this point did not actually address the eligibility for statutory damages in this situation where the alleged copying also occurred before registration.  *See Edwards v. Take Fo' Records, Inc.*, 2020 U.S. Dist. LEXIS 119246, at *50 n.21 (E.D. La. July 8, 2020).

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 8

registered work at issue and the preexisting works be ***owned by the same party*** in order for the registration for a derivative work to suffice to maintain an action. *See*, *e.g.*, *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); *Compendium* § 507.2; 2 NIMMER ON COPYRIGHT § 7.16. And none of the cases cited by Pearson suggest that a party is precluded from taking discovery on copyright ownership as a result of the plaintiff's unsupported statement that it owns all of the material in such preexisting works, which is actually what Pearson is trying to accomplish here.

Public records and the copies of registration certificates produced by Pearson confirm that the plaintiff Pearson Education, Inc. is not the claimant at the Copyright Office (i.e., the publicly listed owner) for the material in many prior editions of the textbooks. Attached as Exhibit B are representative examples of these facts stated on copyright registration certificates justifying the discovery Chegg seeks.[5] The copyright claimants of the prior editions of asserted works include The Benjamin/Cummings Publishing Company; Addison Wesley Longman, Inc.; Prentice-Hall, Inc. (a Simon & Schuster company); Prentice-Hall, Inc. (Simon & Schuster/a Viacom Company); Prentice-Hall, Inc. (a Paramount Communications company); Allyn J. Washington; Macmillan Educational Company (a division of Macmillan, Inc.); Thomas D. Brock; Scott, Foresman and Company; Appleton-Century-Crofts; Appleton & Lange, Inc.; Morton Publishing Company; HarperCollins Publishers, Inc.; HarperCollins College Publishers; Scott/Jones, Inc.; Dellen Publishing Company, a division of Macmillan, Inc.; Macmillan College Publishing Company, Inc.; Merrill Publishing Company; and Allyn & Bacon (employer for hire of Scott K. Powers & Stephen L. Dodd). *See*

---

[5] These facts are collected from the face of copyright registrations Pearson produced and public records relating to registrations Pearson proposed to include in the Amended Complaint (ECF No. 56).

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 9

Exhibit B.  With hand-waving and no discovery in support, Pearson is asking the Court and Chegg to accept that Pearson now owns the copyrights that were registered by each of these third parties.

Some of these entities may have been subsidiaries of Pearson at some point in the past.  For example, according to Pearson's parent company Pearson PLC's 1998 Annual Report,[6] Prentice Hall Inc. was a Pearson PLC subsidiary in 1998, around the time it registered[7] an early version of Basic College Mathematics.  According to a May 5, 2020 press release,[8] Pearson K12 Learning, a company "built upon" Prentice Hall and other brands, rebranded to Savvas "in its transition to becoming an independent company," raising significant questions regarding what copyrights previously owned by the subsidiary Prentice Hall are currently owned by Pearson Education, Inc. and what copyrights went elsewhere.

Other entities that registered prior editions of the works in suit may be current subsidiaries of Pearson.[9]  But if Pearson's subsidiaries or affiliates are the owners of any of these preexisting materials, that does not by itself confer standing to enforce copyrights to Pearson.  *See Amo Dev., LLC v. Alcon Vision, LLC*, Civil Action No. 20-842-CFC, 2023 U.S. Dist. LEXIS 10845, at *11 (D. Del. Jan. 23, 2023) (granting summary judgment to limit monetary recovery, holding that a parent company was not the legal nor beneficial owner of the asserted copyrights owned by its subsidiaries, so the parent lacked standing to bring an action for infringement of the asserted copyrights and could

---

[6] https://ar1998.pearson.com/assocs.htm.

[7] U.S. Copyright Registration No. TX0004890614; Textbook #8 on Exhibit A to the Complaint.

[8] See https://www.savvas.com/index.cfm?locator=PS3e1e.

[9] Addison Wesley Longman, Inc., the copyright claimant for Campbell Biology 5th Edition, is currently on the Massachusetts Secretary of State website as an active entity, having filed on January 3, 2023 an annual report for fiscal year ending on December 31, 2022, using the same Hoboken, NJ address as Pearson Education, Inc. and listing overlapping officers and directors.  Campbell Biology is Textbook #26 on Exhibit A to the Complaint.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 10

not recover damages for infringement).  Whenever current subsidiaries, prior subsidiaries, or other third parties own materials included in the asserted works, the plaintiff Pearson is simply not the owner.  Chegg is entitled to take discovery on what Pearson says it owns, particularly given that prior copyright claimants appear in some cases to continue to exist as separate entities or have been reportedly divested.

### E. **Chegg is entitled to further discovery into the scope and timing of Pearson's copyright registrations.**

Chegg's discovery requests seek basic information regarding how Pearson came to own the material it alleges to have been infringed and what is contained in the claim of its copyright registrations.  If Pearson is unable to prove that it owns material allegedly infringed, or what is in the claim of its copyright registration, it cannot prevail.  *Apparel Bus. Sys., LLC v. Tom James Co.*, Case No. CIV.A.06-1092, 2008 WL 858754, at *11 (E.D. Pa. Mar. 28, 2008) (plaintiff's claims failed where it could not establish the subject matter that its copyrights protect).  "[R]efusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one." *In re Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087, 1100-01 (N.D. Cal. 2002) (permitting Napster discovery into the question of whether the plaintiffs actually own the rights that were the subject of copyright registration certificates; and specifically requiring plaintiffs to produce all chain of title documentation where copyright certificates produced by plaintiff listed a third party as author, not "works for hire" in the name of the plaintiffs).  As in the *Napster* case, many of the copyright registrations provided by the plaintiff Pearson here identify third parties as the copyright claimant, or else when they identify Pearson there is an indication of transfer "by written agreement" instead of "work for hire."  *See* Ex. A, B.  As discussed at the hearing, discovery into copyright ownership is

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 11

routinely granted despite the plaintiff pointing to its copyright registration certificates as evidence of ownership.[10]

Pearson's misstatement of the law and disregard for statutory registration requirements at the December 5, 2022 hearing were a transparent attempt to cover up facts regarding the limitations and defects of Pearson's registrations.  Pearson's registrations are not even *prima facie* evidence that Pearson owns all of the questions in its textbooks.[11]  Pearson has not produced evidence that would establish the scope of its copyright claim, or that it is eligible under the Copyright Act for the remedies it seeks.  Pearson's copyright registrations simply are not *conclusive proof* that deprives Chegg of discovery on these issues.

Pearson should therefore be ordered to respond fully to the discovery requests relating to copyright ownership and the related issue of the scope of the claim of copyright registered.  *See supra* n.1.  We thank the Court for its attention to this request.

**Pearson's Position:**

---

[10] *See*, *e.g.*, *See Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, et al. v. Shopify, Inc., et al.,* Case No. 1:21-cv-1340 CMH/JFA, ECF 74 at 98:2-4 (E.D.Va. May 6, 2022) (ordering Pearson to produce chain-of-title documents underlying the asserted copyright registrations for its textbooks); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir, 2010), *as amended* (Aug. 24, 2010); *ALS Scan, Inc. v. Cloudflare, Inc.*, No. 2:16-cv-05051-GW-AFM, 2017 WL 4769435, at *1 (C.D. Cal. June 28, 2017); *Monge v. Maya Magazines, Inc.*, No. 2:10-cv-00230-RCJ-PA, 2010 WL 2776328, at *2, 4-5 (D. Nev. July 14, 2010); *Arista Records LLC v. Myxer Inc.*, No. CV 08-3935, 2009 U.S. Dist. LEXIS 132668, at *1-2 (C.D.Cal. Nov. 30, 2009); *Tapscan, Inc. v. Friberg*, No. 04-696 DB, 2005 WL 8174972, at *2 (D. Utah June 21, 2005).

[11] By broadly identifying third party material on the registration certificates as a category of unclaimable material included in the textbooks, Pearson's certificates are actually *prima facie* evidence of those facts stated on the certificate, i.e., that Pearson does *not* own all of the material in its textbooks. *See* Ex A., Ex. B; 17 U.S.C. § 410(c).

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 12

Twice this Court has considered and rejected Chegg's requests on this issue.  *See* ECF 54, June 7, 2022 Hr'g Tr. 197:25-198:12; ECF 68-1 at 27-39; 39-45; *see also* Dec. 5, 2022 Hr'g Tr. 93:19-94:17; ECF 74 at 8-10. Chegg raises no new arguments on this third bite.  What Chegg does do several times in its briefing is misstate the law.  As set forth below, Chegg is wrong that Pearson must have registered works within three months of publication, Chegg is wrong that Pearson cannot rely on the registrations of derivative works when asserting claims, and Chegg is wrong that unregistered material in a prior edition is not covered by a subsequent registration.

The facts, which the Court must by now be familiar, remain the same: Pearson has produced registrations for the works that are at issue in this civil action, namely those editions edition that Chegg references on its website which are listed on Exhibit A to the Complaint.  Each of those registrations shows that Pearson is the owner.  Pearson has also produced more than 1,400 registrations of prior editions of those works.  Pearson has also produced copies of the books in digital and physical format.  Those textbooks contain descriptions of the new and revised content contained therein, as well as what content has been licensed into those books. *See* ECF 54, June 7, 2022 Hr'g Tr. 178:5-184:3; 196:5-196:25 (explaining same). Therefore, the copyright registrations that have been produced and the corresponding digital and physical copies of the relevant textbooks provide ample evidence to support Pearson's copyright ownership. Nothing that Chegg speculates it might seek in this additional discovery would change that and Chegg has not made any sufficient proffer to suggest that the further discovery will yield a different result.

In this case, Chegg repeatedly argues that its expired license to use Pearson's questions has some relevance.  The only relevance that license could possibly have would be to demonstrate that Chegg knows that Pearson owns the rights to the licensed works.  Chegg's ongoing efforts to question

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 13

Pearson's ownership rights against its repeated assertions of relevance of this expired license are in stark conflict and should make clear to this Court that Chegg's massive discovery request directed at ownership is a mere litigation tactic. The Court should recognize Chegg's discovery requests for what they are: irrelevant, unduly burdensome, and vastly disproportionate to the needs of this case.

A. **Pearson has produced documents sufficient to constitute *prima facie* evidence of ownership of the works at issue.**

It is black letter law that registration "shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 401(c). In producing registrations for the 150 works in suit, all which are registered in Pearson's name, as well as more than 1,400 registrations of prior editions, Pearson has gone far beyond what the law requires to demonstrate the validity and ownership of the works at issue. *See* 17 U.S.C. § 401(c); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 290–91 (3d Cir. 1991) ("Certificates of registration issued by the U.S. Copyright Office constitute prima facie evidence of the validity and ownership of the material.").

Grasping for a hook to re-raise this issue, Chegg makes much of Pearson's statement at the last hearing that some of the *prior* editions may not have been registered. *See* Dec. 5, 2022 Hr'g Tr. 68:5. But as explained at the hearing, this fact is legally irrelevant. *Id.* 68:5-69:14. The relevant question, as explained below, is whether the edition claimed in this suit is registered. *See Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); Dec. 5, 2022 Hr'g Tr. 68:24-69:2.

Chegg devotes much of its briefing to discussing the Copyright Office's *Compendium of U.S. Copyright Office Practices* (Third Edition) ("*Compendium*") to argue that Pearson cannot assert claims on questions from prior editions. Chegg's argument fails for at least two reasons. First, caselaw makes clear that Pearson may rely on the registration of a derivative work even if the

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 14

infringed portion was first included in a prior edition.  Second, the *Compendium* is not instructive on

the issue.

   ***Effect of derivative registration***.  Multiple courts have confirmed that a plaintiff's registration

of a derivative work is sufficient to permit an infringement claim based on content contained in an

original work, and that no registration for the pre-existing work need be produced.

> [Plaintiff] is the owner of the copyright of both the derivative and pre-existing
> work, the registration certificate relating to the derivative work in this
> circumstance will suffice to permit it to maintain an action for infringement based
> on defendants' infringement of the pre-existing work. That plaintiff need not
> produce a separate registration relating to the pre-existing work is a proposition
> which finds support in other courts and in the writings of scholarly commentators.

*Streetwise Maps*, 159 F.3d at 747; *see also Aspen Technology, Inc. v. M3 Technology, Inc.*, 569 Fed.

Appx. 259, 269 (5th Cir. 2014) ("[P]laintiff's registration of the derivative works was sufficient to

allow an infringement claim based on copying of the material, either newly added or contained in the

underlying work.  This position has been recognized by at least five circuits and by district courts in

two others.") (internal quotations, alterations, and citations omitted); *R.W. Beck, Inc. v. E3

Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009) (same).

   These statements find additional support in Nimmer's authoritative copyright treatise:

> [W]hen the same party owns the derivative or collective work plus the underlying
> elements incorporated therein, its registration of the former is sufficient to permit
> an infringement action on the underlying parts, whether they be new or
> preexisting. That rule is consistent moreover with the current provision that, for
> the purpose of computing statutory damages, all the parts of a compilation or
> derivative work constitute one work.

2 NIMMER ON COPYRIGHT § 7.16.  This district has also addressed this issue leaving no room for

debate. In *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, at *90 (D.N.J. July

28, 2008) ("*MMG*"), the Court examined *Streetwise Maps* and applied its logic in a similar situation,

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 15

stating that because the plaintiff held a valid copyright registration of a derivative work, it could maintain a suit alleging infringement of pre-existing work. Notably, in *MMG*, the registration for the derivative work was the *only* registration received for any version of the website at issue, a fact that stands in stark contrast to the 1,400+ registrations issued for the various editions of works here.

*Compendium*.  Placing much reliance on the *Compendium*, Chegg blatantly ignores the mandates set out in the caselaw of this district and others.  As the the Supreme Court has instructed, this *Compendium* is a "non-binding administrative manual" and one that courts are only expected to follow it "to the extent it has the power to persuade."  *Georgia v. Pub. Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020) (internal quotation omitted).  While the *Compendium* "provides instructions to agency staff regarding their statutory duties and . . . expert guidance to copyright applicants, practitioners, scholars, the courts, and members of the general public . . . ,"  *Compendium* at 1, it is of limited use for interpreting law and regulations. In this case, where courts have already addressed the relevant issue, the *Compendium* is unpersuasive and should carry no weight.

Notwithstanding, assuming that the *Compendium* can guide this Court in this instance,  the *Compendium* itself supports the existing caselaw and Pearson's position that a registration of a derivative may indeed encompass prior unregistered material.

> Derivative works often contain previously published material, previously registered material, public domain material, or material owned by a third party because by definition they are based upon one or more preexisting works. If a derivative work contains an appreciable amount of unclaimable material, the applicant generally should limit the claim to the new material that the author contributed to the work, and the unclaimable material should be excluded from the claim. . . . By contrast *there is generally no need to limit the claim if the derivative work is solely based on or derived from unpublished material, unregistered material, or copyrightable material that is owned by the claimant named in the application*.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 16

§ 507.2, The Scope of Copyright in a Derivative Work (emphasis added). Consistent with this provision, Pearson's registrations of later editions need not be limited to only new material where they are derived from prior unregistered editions or where Pearson owns the rights to both the pre-existing and derivative works. Thus, Chegg's concern about gaps in registrations is illusory, and its insistence on deconstructing the thicket of which questions were added to which editions is an irrelevant frolic.  Pearson owns the rights of prior and present editions and Chegg's misguided theories otherwise cannot justify the burdensome discovery sought, only seeking to divert the Court's attention from the relevant issues in this case.

Ultimately, Chegg repeatedly notes that *prima facie* evidence of ownership can be rebutted, but Chegg notably fails to point to a single piece of evidence that would begin to challenge Pearson's presumption of ownership.  The far-fetched notion that such evidence "may exist" does not remotely justify authorizing Chegg to dredge through decades of author's notes, authorship agreements, and publisher edits, many of which no longer even exist or be accessible even if they do exist.  That is exactly the type of fishing expedition and diversion this presumption was created to prevent.

**B. Chegg misstates the law regarding registration requirements and misleads the Court about its defenses and the remedies to which Pearson is entitled.**

Chegg misstates the law on the timing of registration in arguing that the timing of some registrations may undermine certain of Pearson's claims.  Even assuming Chegg was right on the law (which it is not), the requested discovery is not warranted for several reasons.

*First*, section 408 provides that a copyright owner may register their work "at any time."  17 U.S.C. § 408.  Because all the works on Exhibit A were registered before commencement of this suit, they are timely.  *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886-87 (2019).  In this respect, none of Pearson's registrations are improper or untimely.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 17

*Second*, under § 412, as long as a work is registered before the infringement, the registration requirement for statutory damages is satisfied.  *See* 17 U.S.C. § 412; *Edwards v. Take Fo' Records, Inc.*, 2020 U.S. Dist. LEXIS 119246, at *50 n.21 (E.D. La. July 8, 2020) (A plaintiff's "ability to recover statutory damages or attorney's fees is limited to only those instances of infringement that occur after registration.")  Chegg's repeated reference to the three-month deadline is misguided.  Section 412's three-month deadline to register works after publication is only relevant to the availability of *statutory* damages (not *actual* damages) and attorney's fees.  This is critical because Pearson has not yet elected statutory or actual damages for any or all works.[12]  It is also critical because Chegg has not put forward any evidence indicating that the infringement predated any of the registrations in this case.[13]

Critically, Chegg fails to indicate how the materials it seeks would provide more relevant information on the parties' potential remedies.  While Chegg repeatedly references the three-month deadline imposed in § 412, the only information necessary for that analysis are the dates of infringement and the date of registration.  Pearson has produced the registrations for every work at issue, which show the registration dates.  Whether or not Pearson is entitled to specific remedies is an issue for summary judgment or motions in limine, and Chegg has all the information it needs, indeed all that is reasonably available, to make its arguments at that stage of the case.  This Court already recognized that "[i]t's the date of the registration you're talking about in that instance" and

---

[12] Under 17 U.S.C. § 504(c)(1), Pearson may elect which type of damages it is seeking "at any time before final judgment is rendered."

[13] Indeed, Plaintiff continues to wait for Chegg to produce discovery related to the usage of any of its solutions to end of chapter questions by its subscribers.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 18

"that issue doesn't need you to go behind the -- behind the document itself."  Dec. 5, 2023 Hr'g Tr.

at 80:22-25.

> **C.   Chegg has failed to provide new analysis or evidence warranting the massive burden it seeks to impose or a deviation from this Court's prior rulings on this issue.**

Chegg has not remotely justified deviating from the Court's two prior rulings on this issue or

the massive burden that the requested discovery would create.  As explained in prior briefing, Chegg

has already twice asked the Court to compel:

- "All other Documents Concerning the registration of (or effort to register) copyrights for the Asserted Works, including but not limited to Your Communications with the United States Copyright Office or any author" (RFP 4);

- "All Documents Concerning the chain of title for each Asserted Work, Including any agreement or contract with, or transfer or assignment from, the Person or Persons who created any portion of the Asserted Works to You" (RFP 5);

- "All Documents Concerning the creation and earliest publishing of any version or edition of the Asserted Works, Including drafts, files, notes, correspondence and author or contributor agreements (RFP 10); and

- "All Documents Concerning the creation of the version or edition of the Asserted Works identified in Exhibit A to the Complaint (or any supplement), Including drafts, files, notes, correspondence, and author or contributor agreements" (RFP 11).

These requests, cited in Chegg's footnote 1 above, have already been ruled on and would not

demonstrate anything new or different about Pearson's rights in the textbooks, but would require

Pearson to conduct a massively burdensome and largely manual search for decades' worth of

professors' notes on recent developments in their subjects, drafts and revisions of exercises and

diagrams, corporate merger documents, individual agreements with authors and potentially

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 19

amendments throughout the years, and presumably documentation of the very creation of modern subjects like computer programming[14] and digital networks.[15]

Pearson would have to search for correspondence concerning the creation of the works in suit, including between authors and potentially dozens of Pearson employees who may communicate with an author during the publication process and afterward.  The employees likely to have communicated with the authors for one work are unlikely to be the same employees who communicated with the authors for the other works.  Some of the works are many years old, many of the files requested (if they still exist at all) are not centrally maintained, and the burden to collect, review and produce this mass of materials cannot be overstated.  The sheer irrelevance of these requests absolutely trumps any proportional basis to force Pearson to spend thousands of hours on this speculative goose chase.

Chegg has had ample time to review Pearson's copyright registrations and probe them for issues.  It has been more than six months since Pearson has produced copyright registrations for the 150 works at issue and more than 1,400 registrations of prior editions.  And yet, Chegg does not, and cannot, point to anything meaningful therein to challenge the presumption of ownership to which Pearson is entitled.  *See, e.g., United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1258 (9th Cir. 2011) ("[The plaintiff] did not have to produce any evidence. As the copyright claimant, [the plaintiff] is presumed to own a valid copyright, 17 U.S.C. § 410(c), and the facts stated therein, including the chain of title in the source artwork, are entitled to the presumption of truth.").

Chegg misdirects the Court in listing various claimants (which are mostly well-known Pearson imprints) shown on the copyright registrations of prior editions as a basis to justify the burdensome

---

[14] *See* Introduction to Java Programming and Data Structures, Comprehensive Version, Exh. A to the Complaint, No. 96.

[15] *See* Computer Networking: A Top-Down Approach, Exh. A to the Complaint, No. 43.

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 20

discovery sought.  *See* Ex. B.  It should be provided no weight.  By cherry-picking 38 of the more than 1,400 registrations of prior editions, Chegg attempts to distract from the fact that the vast majority of the registrations for the works at issue name Pearson as the claimant.  Many of the registrations Chegg highlights are multiple decades old, such as RE0000105211, the renewal registration for a work originally registered *in 1953*—which means Chegg is asking for 70 years worth of discovery on chain of title.

Moreover, many of the claimants listed on Chegg's Exhibit B have been acquired by Pearson, facts readily available via a simple internet search and in Chegg's own internal documents. [16] [17] For example, it is well-known and public that Pearson acquired Benjamin/Cummins, Addison Wesley Longman, Prentice Hall and Scott Foresman.  And as Chegg acknowledges above, the relevant question is whether a derivative and preexisting work are "***owned by the same party***," not whether each registration lists the same claimant (emphasis in Chegg's portion above).  These facts help demonstrate the futility and disproportionality of the discovery Chegg seeks—Pearson has produced registrations for all 150 works at issue, and despite possessing more than 1,400 registrations of prior editions of the titles at issue, Chegg asks this Court to force Pearson to identify and produce

---

[16] *See, e.g.,* https://www.latimes.com/archives/la-xpm-1988-02-16-fi-43156-story.html (acquisition of Addison-Wesley); https://money.cnn.com/1998/05/18/deals/simon/ (acquisition of Prentice-Hall); https://www.nytimes.com/1996/02/10/business/pearson-to-buy-a-publisher-from-news-corp.html (acquisition of HarperCollins).

[17] Chegg has produced documents identifying each of these imprints (and many others) as Pearson's. *See* CHEGG000008507 (listing various imprints under the Pearson umbrella, including Addison-Wesley Longman, Prentice Hall, Benjamin Cummings, and Scott Foresman & Co., among others).

Honorable Edward S. Kiel, U.S.M.J.
February 3, 2023
Page 21

information that precedes the digital age, as well as information available through a simple Google

search.  These requests should be denied.[18]

Chegg has repeatedly come to the court empty handed, asking for the opportunity to impose

on Pearson a massively disproportionate and significantly expensive discovery burden.  This briefing

merely reiterates the arguments made multiple times, which the Court has rejected in turn.  Pearson

has provided Chegg with everything needed upon which to base its defenses, and the Court should

deny with prejudice Chegg's third request to impose a meritless fishing expedition.

                                        ***

We thank the Court for its attention to this matter.


                                Respectfully Submitted,

                                _/s/ Marie L. Mathews_

                                Member

---

[18] At the very least, if Chegg has any colorable questions of ownership, it should limit its requests to those specific questions, as opposed to seeking documents for every single edition for every single work.