# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **PEARSON EDUCATION, INC.,** | Case No. 21–cv–16866–EP–ESK |
| Plaintiff, |  |
| v. |  |
| **CHEGG, INC.,** | OPINION AND ORDER |
| Defendant. |  |

**KIEL, U.S.M.J.**

    **THIS MATTER** having come before the Court on defendant Chegg, Inc.'s (Chegg) motion (Motion) to seal portions of a joint statement (Joint Statement) submitted by the parties to the Court seeking resolution of certain discovery disputes (ECF No. 78); and plaintiff Pearson Education, Inc. (Pearson) having filed opposition to the Motion (*id.*); and the Court finding:[1]

    1.    It is understandable that litigation can be contentious. However, when sophisticated adversaries display a chronic inability to amicably resolve the most rudimentary facets of a case's prosecution without resorting to judicial intervention, inefficiency and an unfortunate waste of valuable resources are among the inevitable outcomes. That is the general state of affairs in this case, wherein the lack of cooperation between the parties — as opposed to engaging in productive advocacy in support of their respective interests — has become a recurrent theme. (*See, e.g.*, ECF No. 43 (discovery dispute letter with exhibits totaling 298 pages, dated May 13, 2022); ECF No. 54 (transcript of June 7, 2022 hearing, totaling 253 pages); ECF No. 61 (dispute letter with exhibits concerning sealing portions of the aforementioned transcript totaling 25 pages, dated July 15, 2022); ECF No. 67 (dispute letter with exhibits totaling 43 pages, dated September 9, 2022); ECF No. 72 (transcript of September 20, 2022 hearing, totaling 45 pages); ECF No. 74 (dispute letter with exhibits totaling 47 pages, dated October 17, 2022); ECF No. 75 (dispute letter with exhibits totaling 82 pages, also dated October 17, 2022); ECF No. 85 (November 7, 2022 opinion and

---

[1] The parties, having previously advised me of this burgeoning dispute (ECF No. 73 p.1), filed their respective positions in one set of documents. (ECF No. 78.) I note that contrary to the title of Pearson's proposed order containing language that urges "denying plaintiffs' [sic] request to seal" (ECF No. 78-5 p.1), the Motion seeks relief on behalf of Chegg, *i.e.*, the defendant.

order resolving contested motion for leave to amend the complaint); ECF No. 98 (five-page dispute letter, dated December 23, 2022); ECF No. 99 (dispute letter with exhibits totaling 12 pages, dated January 20, 2023); ECF No. 105 (dispute letter with exhibits totaling 31 pages, dated February 1, 2023); ECF No. 106 (dispute letter with exhibits totaling 152 pages, also dated February 1, 2023); ECF No. 107 (dispute letter with exhibits totaling 34 pages, dated February 3, 2023).)  This Motion presents yet another example.

2.   As set forth by Pearson in the complaint filed on September 13, 2021, Pearson publishes educational textbooks that include "end-of-chapter questions." (ECF No. 1 p. 2.)  Pearson alleges Chegg is infringing Pearson's copyrights by selling answers through Chegg's website to questions provided in Pearson's textbooks.  (*Id.* p. 3.)  Pearson further alleges that even if Chegg's answers "do not repeat Pearson's questions verbatim or paraphrase them," the answers are "derived from … Pearson's questions and other protected expression from Pearson's textbooks." (*Id.* p. 15.) Pearson thus concludes that Chegg is "lessen[ing] the value of those questions as pedagogical tools and violates Pearson's right to derive and market answers to the questions." (*Id.*)  Pearson alleges 150 instances wherein Chegg has infringed its copyrights, which according to Pearson "represents just a fraction of Chegg's infringement." (*Id.* pp. 9, 12.)

3.   In the Joint Statement, which is 27 pages long and which raises several different disputes, Chegg argues that certain spreadsheets (Spreadsheets) produced during discovery contain highly sensitive business information, that significant harm to its competitive position would result if they were disclosed, and thus the Spreadsheets should be designated as "Attorneys' Eyes Only." (ECF No. 78-4 pp. 18–27 (redacted version).)  In opposition, Pearson argues that the Spreadsheets should be designated as being merely "Confidential." (*Id.*) But that is not the dispute that I am contending with here.[2]

4.   Chegg seeks to seal a handful of assertions (Assertions) raised by both parties describing the Spreadsheets in the Joint Statement. (ECF No. 78-4 pp. 19, 26, 27; *see* ECF No. 68-4 (sealed version).)  According to the Declaration submitted by Rahul Desai, who is identified as "head of content" for Chegg: (a) over the course of 13 years, Chegg's engineers have compiled, updated, and analyzed information relating to Chegg's textbook solutions in a database (Database), which is custom-built, proprietary, and confidential; (b) the information contained in the Spreadsheets is derived from the Database; (c)

---

[2] The Joint Statement accompanied a completely separate joint dispute position statement, which totaled 50 pages and which concerned what Chegg characterizes as its "unresolved disputes regarding deficiencies in Pearson's production." (ECF No. 68-1 (filed under seal).)

Chegg uses the Database information to manage content on its website when providing textbook solutions; and (d) competitors could use the Assertions from the Joint Statement to infer or to "reverse engineer" how the website functions, and thus create or enhance their own competing products. (ECF No. 78-1 pp. 2, 3.) Pearson, in challenging the value of Desai's Declaration, does not question Desai's credentials to opine on the value of the Database to Chegg's business model. (ECF No. 78-5.) Nonetheless, Pearson argues that the Declaration "does not separately address the basis for sealing the specific information included in each of the … proposed redactions." (*Id.* p. 3.) Pearson further argues that "[n]o proprietary information is disclosed." (ECF No. 78-3 p. 6.) Thus, I am being called upon in this instance to resolve a dispute that has been built upon the foundation of a different dispute set down in the Joint Statement.

    5.    In deciding whether the Assertions should be sealed, I am required to consider:

> (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrant the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; [and] (d) why a less restrictive alternative to the relief sought is not available.

*China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, No. 15-06210, 2017 WL 3718108, at *2 (D.N.J. Aug. 29, 2017) (quoting Local Civil Rule 5.3(c)); *see In re Gabapentin Pat. Litig.*, 312 F.Supp.2d 653, 664 (D.N.J. 2004). The alleged serious injury must be stated with particularity, and not through conclusory or broad statements. *See Nelson v. Nissan N. Am., Inc.*, No. 11-05712, 2014 WL 12617593, at *3 (D.N.J. Dec. 22, 2014). Furthermore, the burden is on Chegg to demonstrate that the Assertions are indicative of trade secrets that are worthy of being sealed. *See id.* at *4 (holding mere confidentiality does not transform business information into a trade secret, and a party seeking trade secret protection must show that the business information at issue is indeed a trade secret); *see also In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 679 (3d Cir. 2019) (vacating order sealing party's "research strategies," because "blanket assertions of harm …f[e]ll short of the clearly defined and serious injury" that a party is obligated to set forth by "explain[ing] how … research strategies could assist current competitors or harm [the party's] current relationships").

    6.    The presence of trade secrets or other confidential information weighs against public access, and thus a court may protect such information from disclosure. *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157,

166 (3d Cir. 1993); *see also Alchem USA Inc. v. Cage*, No. 21-02994, 2022 WL 3043153, at *4 n.7 (3d Cir. Aug. 2, 2022) (holding that "[a]lthough trade secrets are not automatically protected from disclosure, … district courts in th[e Third] Circuit often find their disclosure would cause a harm sufficient to warrant sealing"). Confidential information regarding the structure and function of a party's proprietary database qualifies for protection from public disclosure, due to the risk that the information will be used improperly by competitors to the severe disadvantage of that party. *See IQVIA, Inc. v. Veeva Sys., Inc.*, No. 17-00177, 2018 WL 4537188, at *2 (D.N.J. Sept. 14, 2018) (holding that information from a party's "proprietary database" would be designated as being highly confidential); *In re Fosamax Prods. Liab. Litig.*, No. 11-05304, 2013 WL 12174178, at *2 (D.N.J. Aug. 16, 2013) (sealing a party's "proprietary and/or commercially sensitive internal business practices … [and] databases").

7. Thus, Chegg must demonstrate "good cause" to seal information that would otherwise be made publicly available on the docket. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). I possess the discretion to seal the Assertions in "evaluat[ing] the competing considerations in light of the facts" of this case. *Id.* at 798.

8. I find that Chegg has demonstrated that each Assertion describes highly sensitive information in the Spreadsheets that, when read in conjunction with each other, could reveal the structure and function of the Database, which Chegg maintains as confidential and which is not disseminated to the public. Chegg has a legitimate private interest in preventing public access to its trade secret information contained in the Database. In fact, it appears that the Assertions could lead a knowledgeable and motivated competitor to discover the manner in which Chegg operates its business operations through the Database and to develop competing products to Chegg's detriment. Thus, I credit Chegg's argument that it would suffer a clearly defined and serious injury if the Assertions were to be disclosed. There is no less restrictive alternative to sealing the Assertions at this juncture, as the public has no legitimate interest in viewing Chegg's trade secrets or sensitive business information. *See Bock v. Pressler & Pressler, LLP*, No. 11-07593, 2014 WL 1233039, at *2, *3 (D.N.J. Mar. 25, 2014) (finding that a party's filing of redacted affidavit was supported by its legitimate private interest in maintaining the confidentiality of the internal procedures that comprised its "secret sauce" in running its operations efficiently).

9. In any event, I note that the other dispute underlying the dispute concerning the sealing of the Assertions — that is, Pearson's objection to Chegg having designated the Spreadsheets as Attorneys' Eyes Only (*see* ECF No. 78-3 pp. 2, 3 (in column entitled, "Party in Opposition to Sealing, if any, and Basis")) — remains pending. As a practical matter, it is the safest course to rule in

Chegg's favor at this juncture, and thus not potentially render the underlying dispute concerning the proper designation of the Spreadsheets as moot. Therefore, in granting the Motion, I do so without prejudice to Pearson to revisit the matter should its challenge concerning the designation of the Spreadsheets be successful.

Accordingly,

**IT IS** on this   **6th** day of **February 2023**   **ORDERED** that:

1.  The Motion is **GRANTED**. The Assertions shall be sealed at this juncture. The Court notes that a redacted version of the Joint Statement has been filed at ECF No. 78-4.

2.  Pearson is granted leave to move for reconsideration should Pearson succeed as to its challenge to the "Attorneys' Eyes Only" designation affixed to the Spreadsheets referenced in the Assertions.

3.  The Clerk shall terminate ECF No. 78.

　　　　　　　　　　　　　　　　　　　 */s/ Edward S. Kiel*
　　　　　　　　　　　　　　　　　　　**EDWARD S. KIEL**
　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**