UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEARSON EDUCATION, INC., <br><br>         Plaintiff, <br><br>    v. <br><br>CHEGG, INC., <br><br>         Defendant. | Civil Action No.: 21-16866 <br><br><br> **OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER AS TO THE DISCOVERABILITY OF CHEGG STUDY PURPORTEDLY BEING USED FOR CHEATING** |

**LINARES, J.**

This matter comes before the Special Master by way of Plaintiff Pearson Education, Inc.s' letter application to compel Defendant Chegg, Inc. to produce certain material regarding Chegg Study purportedly being used for cheating. (ECF No. 105). Chegg simultaneously opposed Pearson's application in the aforementioned joint letter. (*See generally id.*). The Special Master heard Oral Argument regarding this dispute on April 4, 2023.[1] For the reasons set forth below, the Special Master **DENIES** Pearson's application.

## I. BACKGROUND

The Special Master presumes the parties' familiarity with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

---

[1] The transcript from the April 4, 2023 Hearing shall be cited as "Hrg. Tr." followed by the pertinent page and line numbers.

This copyright infringement action can be briefly summarized in the following manner. Pearson is a textbook company that creates and sells educational textbooks on a variety of topics. (ECF No. 1 ("Compl.") ¶1). Part of Pearson's textbook business model is to include "end-of-chapter" questions. (Compl. ¶ 16).

Chegg is in the business of selling study solutions, including, but not limited to, answers to textbook questions like those found in Pearson's textbooks. (Compl. ¶ 4). Although absent from Pearson's Complaint, there seems to be no dispute that, from April 2016 through May 2021, Pearson and Chegg had a licensing arrangement that allowed Chegg to reprint "verbatim text of [Pearson's] end-of-chapter problems from many of Pearson's textbooks." (ECF No. 26 ("Answer") at 3). The license expired in May 2021 and was not renewed. (Id.). That's where the present dispute begins.

According to Pearson, Chegg has continued to reprint its end-of-chapter questions in connection with its study guides and solutions. (Compl. ¶¶ 27, 29, 35). Pearson claims that this ongoing reproduction by Chegg infringes on Pearson's copyrights. (Id.). Accordingly, Pearson brought this action to recover damages and obtain an injunction prohibiting Chegg's reproductions. (*See generally* Compl.).

Part of Pearson's allegations is that Chegg's study solutions has allegedly been "implicated in cheating scandals." (Compl. ¶ 28). Pearson cites to a *Forbes* article that purportedly characterized Chegg as "a 'superspreader' of cheating." (Id.; *see also* Hrg. Tr. 119:2-5). Pearson claims that the use of Chegg Study to cheat is so pervasive that Chegg has actually set up a "cheating mailbox" for it to field complaints regarding this. (Hr. Tr. 119:8-9). According to Pearson, the use of Chegg's platform to cheat harms Pearson, in part, because it

"undermines the value of Pearson's textbooks and end-of-chapter questions as a learning tool." (Compl. ¶ 53). This is where the current discovery dispute stems from.

Based on the above allegations, Pearson served document demands "regarding cheating and Chegg Study." (ECF No. 105 at 4). Pearson explains that Chegg's entire business model revolves around Chegg's solutions to Pearson's end-of-chapter questions, and that Chegg's product would be useless if Pearson did not publish said questions. (Id. at 2). Pearson further asserts that, as alleged in the Complaint, Chegg's solutions have been recognized as a powerful cheating tool. (Id. at 3). Additionally, Pearson notes that Chegg, at the very least, is aware of these allegations. (Id.). For example, Chegg has purportedly responded to the *Forbes* author, who published the article, and advised her that her methodology was flawed. (Id.). And, as mentioned, Pearson notes that Chegg has set up an internal email inbox to receive complaints from professors and teachers regarding the cheating. (Id.; Hr. Tr. 119:8-9).

Thus, according to Pearson, the demanded discovery should be permitted because it is relevant, and, for multiple reasons, tethered to the allegations in the Complaint. (Id.). First, Pearson points to the record and asserts that Chegg has not claimed that its product is for a nonprofit educational use. (Id. at 5). In other words, Chegg concedes that Chegg Study is for a commercial purposes, but argues that it still qualifies for the fair use defense because it is transformative. (Id.). Pearson asserts that the demanded discovery will allow it to rebut any claims by Chegg that Chegg Study serves a proper educational purpose. (Hrg. Tr. 119:18-120:1, 120:18-22). Accordingly, Pearson claims that, based on Chegg's own representations, the demanded documents are relevant and discoverable because Pearson is allowed to make a diligent inquiry into the purpose of Chegg Study; *i.e.*, whether it is for an educational purpose or simply designed to undercut Pearson's commercially viable product. (ECF No. 105 at 5).

Pearson further avers that the discovery is pertinent to its demand for injunctive relief. (Hrg. Tr. 121:24-122:2). Specifically, Pearson believes that the information regarding what Chegg knew about how its Chegg Study product was being used will inform "the public interest at stake" portion of the injunctive relief analysis. (Hrg. Tr. 122:3-7). Hence, Pearson concludes that "there is no way for the Court to assist (*sic*) whether its beneficial or not without looking at the full record" (Hrg. Tr. 122:16-18), and Chegg's knowledge regarding the use of Chegg Study to cheat is part of that "full record." (Id.).

Additionally, as to fair use, Pearson argues that it is allowed to explore the effect of Chegg's use of the copyrighted materials upon the potential market or value of Pearson's copyrighted works. (ECF No. 105 at 7). Pearson avers that if Chegg's own document discovery shows that Chegg Study is used for cheating then it would undermine Chegg's position that the study guides serve a public benefit. (Id.).

Moreover, Pearson asserts that the demanded discovery will also shed light on whether Chegg Study is transformative. (Hrg. Tr. 123:13-17). If Chegg cannot show it is transformative – in other words "does it add new or further or different in character or alter the meaning of the original" – then Chegg cannot avail itself of the fair use defense. (Id.). Hence, Pearson argues what Chegg has or has not done to stop or corral the cheating is relevant to the applicability of the fair use defense.

Pearson also claims that the "Chegg Study to cheat documents" are relevant to its demand for statutory damages. It notes that part of the statutory damages analysis is whether there has been harm caused by the allegedly infringing work. (ECF No. 105 at 8). Pearson also explains that the infringer's state of mind is also something the jury may consider when determining

4

whether to award statutory damages.  (Id. at 9).  Hence, Pearson concludes this demanded discovery is relevant as it will assist the jury in ascertaining both of the factors.

Lastly, Pearson avers that the demanded discovery is relevant to credibility determinations.  (Id.).  Specifically, Pearson claims that Chegg is likely to move for summary judgment on the fair use defense at the end of the case.  (Id.).  In making that motion, Pearson is concerned that certain witnesses will be offered in support of the fair use defense.  (Id.).  Pearson asserts that the documents pertaining to Chegg Study being used to cheat may provide it with the ability to rebut the credibility of certain witnesses.  (Id. at 10).

Chegg has objected to producing these documents on grounds of relevancy.  (Id. at 10).  Preliminarily, Chegg notes that this issue has already been disposed of by the Court and claims that this motion is merely a re-litigation of precisely the same dispute.  (Id. at 10).  Chegg points to two hearing transcripts (one from June 7, 2022 and one from December 5, 2022) where the Court explicitly stated that it did not "see the connection" or the "relevanc[e] of [Chegg's internal documents regarding alleged cheating]."  (Id.).  Hence, Chegg concludes that this dispute has been resolved and that Judge Kiel's prior ruling on the matter should be the end of the inquiry for the Special Master.  (Id.; *see also* Hrg. Tr. 127:15-29:25, 131:21-24 (citing December 5, 2022 Hearing Transcript)).

Next, Chegg asserts that the demanded discovery is irrelevant to the fair use analysis.  (Id. at 11).  Chegg notes that the primary inquiry in this analysis is whether Chegg's study guide created a new purpose in such a manner that it could be considered transformative.  (Id.).  Thus, according to Chegg, the inquiry ends there since Chegg's study guides have created a new purpose or character independent of Pearson's own end-of-chapter questions.  (Id.).  Any subjective opinions regarding the Chegg study guides – including those regarding any purported

cheating – are irrelevant. (Id.). Thus, internal documents pertaining to cheating that are focused strictly on the subjective opinions of third-parties are not discoverable. (Id.).

Ultimately, Chegg avers that the demanded discovery has no place in the fair use analysis. (Id. at 13). This is because the transformative inquiry of the fair use analysis requires a side-by-side comparison and nothing more. (Id.). In other words, the transformative analysis is narrowly limited to comparing the copyrighted work and the allegedly infringing work. Hence, Chegg concludes that any discovery on cheating would not guide the discussion on fair use and, therefore, is irrelevant. (Id.).

Similarly, Chegg claims that discovery regarding cheating does not inform whether Chegg's product has had any effect on the value of Pearson's copyrighted work. Chegg avers that Pearson is looking at the public harm inquiry from the wrong perspective. (Id. at 14). According to Chegg, the inquiry has to focus on the public gain if Chegg's use is permitted as compared to the harm Pearson will suffer. (Id.). Chegg says, based on this standard, third-party (*e.g.*, students) use of Chegg Study to cheat, or Chegg's knowledge regarding said cheating, is completely irrelevant. (Id.).

Chegg further argues that the internal documents are irrelevant to the injunction analysis. (Id. at 15). In responding to Pearson, Chegg distinguishes the cited case law – specifically, *Educ. Testing Servs. v. Katzman*, 793 F.2d 533 (3d Cir. 1986). Chegg claims that *Katzman* contains only one fleeting sentence that supports Pearson's position. (Id.). However, a complete review of *Katzman* reveals that it is both factually and procedurally different.

First, factually, the parties in *Katzman* did not have a prior relationship and thus the Third Circuit held that an injunction was necessary to preserve the copyright owner's teaching aids and unique nature of secure tests that no one had access to. (Id. (quoting *Katzman*, 793 F.2d at 535-

56, 547))). Here, by contrast, Chegg and Pearson were business partners which inherently gave Chegg access to the materials. Thus, any concern regarding an unauthorized dissemination to Chegg is not present.

In addition, *Katzman* was on appeal from a preliminary injunction, where there was no discovery. Hence, Chegg concludes, the procedural posture inherently shows that *Katzman* provides no guidance on a discovery dispute – since there was no discovery in *Katzman* because the appeal came after the preliminary injunction issued and before discovery began.

Moreover, on this topic, Chegg notes that the injunction would be directed to the infringement. (Hrg. Tr. 135:20-136:11). To that extent, Chegg argues that the inquiry would be focused on any public benefit gained from enjoining the infringing work. (Id.). Thus, according to Chegg, whether the work is used for cheating does not impact this portion of the analysis. (Id.).

Finally, Chegg claims that the demanded discovery is irrelevant to statutory damages. (ECF No. 5 at 16). Both parties agree that the "willful" element of the analysis is the pertinent one for this dispute. (Id.). Chegg, once again, goes back to the argument that how third-parties choose to use the study guides provides no insight as to the willfulness analysis. (Id.). Said differently, just because students decided to use Chegg Study to cheat does not inform whether Chegg was willful in its alleged infringement. Hence, Chegg concludes that any document evidence on this topic would not assist a jury on the issue of statutory damages. (Id. at 16-17).

## II.  LEGAL STANDARD

Rule 26 explains that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the

information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The broad scope of the discovery rules and liberal interpretation given them by Courts shows that Congress realized that a "[*m*]*utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.*" *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947) (emphasis added).

### III. ANALYSIS

Preliminary, the Special Master addresses the Parties' arguments revolving around prior decisions made by the Court. Specifically, in opposing this application, Chegg has asserted that Judge Kiel has already rendered final determinations regarding certain discovery and thus the Special Master should not readdress same. (*See*, *e.g.*, ECF No. 105 at 10). Pearson frequently responds to Chegg by averring that Judge Kiel, during his colloquies, invited the Parties to revisit the discovery disputes if the need arose. (Hrg. Tr. 115:1-116:8).

The Special Master has reviewed the transcripts from Judge Kiel's hearings. Specifically on June 7, 2022, Judge Kiel denied Pearson's request for the production of the discovery that is the subject of the dispute at hand. (*See* June 7, 2022 Hearing Transcript 120:24, 120:23-121:3). Pearson subsequently raised the issue before Judge Kiel, and His Honor once again concluded "that it's not relevant." (*See* December 5, 2022 Hearing Transcript 180:14-20). Nonetheless, Pearson pressed that there was additional case law the Court should review and the Court permitted limited briefing on the matter. (*See* id. 180:22-181:2).

In the joint dispute letter that forms the basis of the dispute before the Special Master (ECF No. 105), Pearson once again advanced, albeit more detailed, a similar argument to the one that it previously raised before Judge Kiel. As noted, Chegg promptly alerted Judge Kiel that this dispute had already been disposed of. (ECF No. 105 at 10). The Special Master was

8

appointed before Judge Kiel had an opportunity to address the arguments advanced in this joint dispute letter.

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under Rule 26 depend upon the context of each action." *In re Gerber Probiotic Sales Pracs. Litig.*, 306 F.R.D. 527, 538 (D.N.J. 2015) (citations omitted). While the discovery rules are indeed broad, they are also not tools to perpetually extend the final resolution of the underlying claims. Indeed, "[j]ustice for the parties, and not necessarily vindication of the attorneys, demands that this case move toward a fair adjudication on the merits." *Avco Corp. v. Turn and Bank Holdings, Inc.*, 2017 WL 2224915, at *1 (M.D. Mich. May 22, 2017). The Special Master will dispose of this dispute on the merits. However, the Parties are to carefully consider future discovery disputes and dedicate their resources to advancing this action in an expeditious manner in order to avoid duplicative efforts.

Turning to the actual dispute, the Special Master concludes that the discovery Pearson seeks is not relevant. As noted above, the underlying claims revolve on whether Chegg's study solutions infringe on Pearson's textbooks. Thus, the discovery needs to primarily focus on the elements of copyright infringement and all permissible defenses Chegg may have.

"To make out a valid claim of copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Carlin v. Bezos*, 649 F. App'x 181, 183 (3d Cir. 2016) (quoting *Dun & Bradstreet Software Servs., Inc v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). Here, Pearson has asserted valid copyrights in connection with its textbooks. Thus, the only outstanding inquiry pertinent to the matter *sub judice* is whether Chegg's study solutions infringe on those copyrights by way of unauthorized copying.

As discussed, the *sine qua non* of Pearson's allegations is Chegg Study improperly contains Pearson's end-of-chapter questions in Chegg's study solutions. Hence, the discovery in this matter should focus primarily on Pearson's copyright materials and the allegedly infringing Chegg materials. Indeed, the discovery needed to ascertain any purported copyright infringement is fairly straightforward.

Chegg's defenses to infringement is where discovery begins to become more complicated. The fair use defense requires a more refined inspection of additional elements and facts. Matters such as whether the material was transformative, whether there is any public gain to be obtained from enjoining Chegg, and any degradation to the value of Pearson's copyrights, along with other issues, all become topics subject to discovery.

What remains absent from the gamut of discoverable issues is how third-parties utilize Chegg's products. During the April 4, 2023 hearing, the Special Master asked Pearson to explain how third-party cheating was in fact relevant. (Hrg. Tr. 120:3-16). Pearson provided four reasons: 1) "Chegg doesn't get to put a witness on the stand or [during] summary judgment to claim that Chegg is this great academic tool without subjecting that testimony to some level of scrutiny"; 2) Pearson is "seeking injunctive relief" and part of that analysis is ascertaining the "public interest at stake"; 3) analyzing Chegg's fair use defense; and 4) damages. (Hrg. Tr. 120:18-22, 121:25-122:3, 123:2-3, 126:23-25).

None of the reasons provided by Pearson support a need to inquire as to third-party use or cheating. As Chegg correctly noted, Pearson's first argument is based on a hypothetical witness and his or her hypothetical statement. There is no evidence that Chegg intends on defeating the infringement claims by merely arguing that its Chegg Study products are great academic tools. The fact that a potentially infringing work has some benefit to the public does not render it non-

infringing. Moreover, even if this argument was advanced, third-party cheating alone is not likely to alter the positive characteristics of the Chegg Study from Chegg's perspective.

Next, Pearson's "public interest" argument is misplaced. The public interest prong of this analysis is not focused on whether the allegedly infringing work has a public benefit. Rather, the inquiry is whether the public interest is served by granting or enforcing the copyright by means less restrictive than injunction. *See TD Banks N.A. v. Hill*, 928 F.3d 259, 284-85 (3d Cir. 2019) (outlining the public interest analysis for injunctive relief in a copyright infringement action). Again, a third-party's decision to use the Chegg Study for cheating, or even Chegg's knowledge regarding same, does not influence the public interest prong of the injunctive relief analysis. This is because that inquiry will begin and end with whether the public interest will be served if Chegg's conduct is deemed infringing and needs to be enjoined to protect Pearson's creative expressions.

The same is true as to Chegg's fair use defense. This defense centers on if Chegg Study is transformative. As such, the focus of the inquiry will be on what Chegg has added, changed, and/or modified such that Chegg Study can be considered transformative. After-the-fact cheating would not alter the transformative nature of Chegg's work if in fact it is deemed transformative.

Finally, Pearson's damages argument is not persuasive. The economics of Pearson's textbooks is something that should be readily available to Pearson. If there has been a diminution in revenue as a result of Chegg Study that too should be readily apparent to Pearson. Furthermore, the damages calculation will be based on Chegg Study's existence, regardless of the use. In other words, Pearson should be able to ascertain how it has been damaged simply by pointing to the infringing works without consideration of whether the work was being used to

cheat or as a legitimate study guide. There are also more efficient ways of ascertaining any brand tarnishment or loss of good will; *e.g.*, expert opinions.

Based on the foregoing, there is no scenario where the demanded discovery regarding Chegg Study being used to cheat is appropriate in this matter.

## IV. ORDER

**IT IS** on this 16th day of May, 2023,

**ORDERED** that Pearson's Motion to Compel Discovery Regarding Chegg Study Being Used to Cheat is hereby **DENIED**.

**SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　__/s/ *Jose L. Linares*_____

　　　　　　　　　　　　　　　　　　　　Hon. Jose L. Linares, U.S.D.J. (Ret.)