# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEARSON EDUCATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHEGG, INC., <br><br> Defendant. | Civil Action No.: 21-16866 <br><br><br> **ORDER OF THE <br> SPECIAL DISCOVERY MASTER RE: <br> DEFENDANT'S REQUEST FOR <br> PRODUCTION OF DOCUMENTS RE: <br> "CLUTCH PREP" ETC.** |

**LINARES, J.**

This matter comes before the Special Master by way of Defendant Chegg, Inc.'s letter application to compel Plaintiff Pearson Education, Inc., to produce certain documents relating to Pearson's efforts to compete with Chegg in the market, including materials relating to "Clutch Prep" and "Pearson Channels+". (ECF No. 106 at 18-22). Pearson simultaneously opposed Chegg's application in the aforementioned joint letter. (*See generally id.*). The Special Master heard Oral Argument regarding this dispute on April 4, 2023.[1] As directed at the hearing, Chegg made an additional written submission on April 6, 2023, Pearson submitted a response on April 10, 2023, and Chegg submitted a reply on April 12, 2023.

For the reasons set forth below, Chegg's application is **GRANTED IN PART AND DENIED IN PART**.

---

[1] The transcript from the April 4, 2023 Hearing shall be cited as "Hrg. Tr." followed by the pertinent page and line numbers.

2

## I. BACKGROUND

The Special Master presumes the parties' familiarity with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

This copyright infringement action can be briefly summarized in the following manner. Pearson is a textbook company that creates and sells educational textbooks on a variety of topics. (ECF No. 1 ("Compl.") ¶1). Part of Pearson's textbook business model is to include "end-of-chapter" questions. (Compl. ¶ 16).

Chegg is in the business of selling study solutions, including, but not limited to, answers to textbook questions like those found in Pearson's textbooks. (Compl. ¶ 4). Although absent from Pearson's Complaint, there seems to be no dispute that, from April 2016 through May 2021, Pearson and Chegg had a licensing arrangement that allowed Chegg to reprint "verbatim text of [Pearson's] end-of-chapter problems from many of Pearson's textbooks." (ECF No. 26 ("Answer") at 3). The license expired in May 2021 and was not renewed. (Id.). That's where the present dispute begins.

According to Pearson, Chegg has continued to reprint its end-of-chapter questions in connection with its study guides and solutions. (Compl. ¶¶ 27, 29, 35). Pearson claims that this ongoing reproduction by Chegg infringes on Pearson's copyrights. (Id.). Accordingly, Pearson brought this action to recover damages and obtain an injunction prohibiting Chegg's reproductions. (*See generally* Compl.).

The current dispute involves Chegg's request for information from Pearson relating to Pearson's efforts to compete with Chegg in the solutions market, including the digital learning

platforms "Clutch Prep" and "Pearson Channels+". Pearson acquired Clutch Prep, a company that provided student tutoring videos, in March 2022, and launched it as a "Pearson Channels" product. Pearson Channels is an online product offered as a slate of products that make up Pearson+, which supplements and expands upon the offerings in Pearson's textbooks.

Chegg argues that Pearson's digital learning platforms, including Clutch Prep and Pearson+, do exactly what it accuses Chegg of doing, *i.e.*, providing solutions to other publishers' textbook questions. Pearson disputes this characterization, and states that it only provides solutions to its own textbook questions, not that of other publishers. While Pearson acknowledges the existence of at least one instance where it provided solutions to another publisher's textbook question, it states that it immediately removed that material from its platforms as soon as it became aware of it. (*See* April 10, 2023 Response at 2). Chegg claims that it has "at least 17 examples of such solutions" where Pearson has provided answers to other publishers' textbook questions. (*See* April 12, 2023 Reply at 2). Pearson claims it has no intention to publish answers to other publisher's questions. (Hrg Tr. at 213).

Chegg's initial letter application (ECF 106 at 18-22) referenced almost 50 individual discovery requests. During the April 4, 2023 hearing, the Special Master directed Chegg to identify three to five requests it seeks to compel. In response, Chegg identified two requests, RFP 57 and RFP 77, and proposed 4 searches with connecting search terms to be run across the 26 Pearson custodians. (*See* April 6, 2023 Submission and April 12, 2023 Reply).

Chegg argues that Pearson's motivation to supplant Chegg in the market is relevant to the availability of equitable relief (including an injunction and disgorgement of profits), as well as Chegg's defenses of unclean hands, fair use, and copyright misuse. Chegg also argues that Pearson's efforts to supplant or displace Chegg are also directly relevant to the fourth of the non-

3

exhaustive fair use factors: "the effect of the use on the potential market for or value of the copyrighted work." *See* 17 U.S.C. ¶ 107(4). Thus, according to Chegg, it is entitled to discovery on Pearson's relationship with Clutch Prep, the selection of questions to answer and the creation process for answers on Clutch Prep/Pearson Channels+, and Pearson's knowledge, policies, and procedures relating thereto.

In response, Pearson argues that it has the right to exploit its own copyrights in full, including the exclusive right to "prepare derivative works based upon the copyrighted work." (*See* April 10, 2023 Response; ECF No. 106 at 21 (citing 17 U.S.C. § 106)). In seeking discovery concerning the motivation behind Pearson's claims, and how Pearson answers textbook questions in a newly released service, Pearson asserts that Chegg is attempting to distract from two critical points: (1) a copyright owner alone is entitled to determine whether, when, and how to exercise its exclusive rights; and (2) this case concerns *Chegg's* infringement of Pearson's works. Pearson also argues that its use of its own intellectual property is irrelevant to any defenses Chegg may assert, including unclean hands, fair use or copyright misuse, and to the issue of whether Chegg's use effects the potential market for Pearson's works.

## II. LEGAL STANDARD

Rule 26 explains that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The broad scope of the discovery rules and liberal interpretation given them by Courts shows that Congress realized that a "[m]*utual knowledge of*

*all the relevant facts gathered by both parties is essential to proper litigation.*"  *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947) (emphasis added).

### III.  ANALYSIS

Preliminary, the Special Master addresses the Parties' arguments revolving around prior decisions made by the Court.  Specifically, in opposing this application, Pearson has asserted that the Court has already rejected RFP 57.  (April 10, 2023 Response).

The Special Master has reviewed the transcript of the June 7, 2022 hearing before Judge Kiel.  In addition to the sheer number of requests that Chegg was seeking to compel, the main objection asserted by Pearson centered on the overbroad and vague definitions within some of the requests.  Stated simply, Pearson asserted it did not understand what information Chegg was seeking because the defined terms were too vague and too broad.   (*See* June 7, 2022 Hearing Transcript 153-155).

While the Court initially indicated that he had some concerns about vagueness (June 7, 2022 Hearing Transcript 161:14; 162:19-32), the Court made it clear that Chegg was entitled to some discovery on this topic and that responsive information had to be produced (June 7, 2022 Hearing Transcript 166:1-2; 172:13-173-1; 175:1-20).  The Court gave Chegg permission to send additional requests to Pearson about particular platforms. *Id.* ("And continue to talk about those definitions. That definition seems to be pretty tight to me. And whether that produces a bunch of information because of the way that your platforms are, then that's the way it is; right?  It has to be produced.").  During the course of discussion with counsel, the Court narrowed the scope to "digital and publicly available aids or supplemental learning materials that just deal with the end-of-chapter questions and solutions" (June 7, 2022 Hearing Transcript 176:10-12), but the Court did not reject specific RFPs.  Accordingly, RFP 57 and 77 are properly before the Special Master

and must be viewed in the context of the Court's rulings and narrowed guidance from the June 7, 2022 hearing.

Consistent with the Court's prior ruling, Chegg has already narrowed RFP 57 by limiting the information it seeks on the Pearson+ platform to end-of-chapter questions and solutions. (*See* April 10, 2023 Response at 3). RFP 77 is an additional request Chegg served after the June 7, 2022 hearing. It, too, must be read consistent with the narrowed scope of such requests on this topic as previously determined by the Court. Accordingly, RFP 77 must be further narrowed to information relating to end-of-chapter questions and solutions on Pearson Channels.

While there is no question that the Court previously held that Chegg is entitled to discovery on the general topic of Pearson's efforts to compete with Chegg or supplant Chegg in the market, including the digital learning platforms "Clutch Prep" and "Pearson Channels", the parties have included this issue as an open discovery dispute to be decided by the Special Master. (*See* Joint Submission Outlining Logistics and Priority of Outstanding Discovery Disputes ("Joint Submission") submitted to the Special Master by the parties). The Joint Submission refers to additional briefing on the issue that was filed with the Court in a joint dispute letter on February 1, 2023. (Joint Submission (citing ECF 106 at 18-22)). And, while the arguments advanced in the joint dispute letter are similar to those made before the Court during the June 7, 2022 hearing, the Special Master was appointed before Judge Kiel had an opportunity to address the arguments in this joint dispute letter. Accordingly, the Special Master will address these disputes herein.

Turning to the actual dispute, the Special Master concludes that the information Chegg seeks relating to Pearson's alleged efforts to compete with Chegg in the market is discoverable.

The discovery Chegg seeks is relevant to the availability of equitable relief (including an injunction), as well as Chegg's defenses of unclean hands, fair use, and copyright misuse.

Copyright misuse is an equitable defense based upon a doctrine of unclean hands. As set forth in *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 342 F.3d 191, 204 (3d Cir. 2003), the misuse doctrine "extends from the equitable principle that courts may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest." *Id.* (quoting *Morton Salt, Co. v. G.S. Suppiger Co.,* 314 U.S. 488, 492 (1942)). "Misuse often exists where the patent or copyright holder has engaged in some form of anti-competitive behavior." *Id.* (citing *Morton Salt,* 314 U.S. at 492 (explaining that public policy "forbids the use of the patent to secure an exclusive right or limited monopoly not granted by the Patent Office"); *Practice Mgmt. Information Corp. v. The Am. Med. Assoc.,* 121 F.3d 516, 521 (9th Cir. 1997) (finding copyright misuse where license to use copyrighted good prohibited licensee from using competing goods); *Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 979 (4th Cir. 1990) (holding the copyright holder misused its copyright by including in licensing agreements a provision that neither the licensee company nor its officers, employees, *et al.,* could develop competing goods for the term of the agreement, ninety-nine years)).

During the April 4, 2023 hearing, Chegg expanded upon its copyright misuse and unclean hands defense and how discovery into Clutch Prep and Pearson+ is relevant. Chegg pointed to an internal Pearson memo[2] it claimed was evidence that Pearson terminated the license for the purpose of planning to occupy Chegg's space in the market with Pearson's own product, and that Pearson conjured up a "bogus" infringement theory, after years and years of consistent industry practice, and then entered the market specifically to compete head to head with Chegg and push

---

[2] Court Exhibit 7 (marked attorneys eyes only).

them out of the way. (*See generally* Hrg. Tr. at 209-212). The information Chegg seeks in RFP 57 and 77 is relevant to this inquiry and several affirmative defenses raised by Chegg.

Pearson also argues that RFP 57 and 77 are burdensome and disproportionate, the same arguments it previously raised with the Court. During the June 7, 2022 hearing, the Court addressed Pearson's burden/proportionality concerns:

> THE COURT: Well, this is -- to me it doesn't sound like a guessing game. They're being relatively specific, in my mind, and if it produces a lot of stuff, then that's -- then that's your business model.
>
> When we talked about their business model and how it operates in India and that may result in a lot of burden to them in producing information that ultimately may need to be produced and -- that -- that ruling before was about prejudice to you bringing up on a further motion to compel as to Chegg India.
>
> But this is -- right? This is your business model and how you operate. And there has to be some obligation on your part to go through whatever your business is and figure out what portions of that business have these end of chapter -- end of chapter solutions in them. Right?
>
> So it sounds like Ms. Schuyler's going to get in contact with you; right? She's going to give you a list of what information or what platforms she wants you to search. Right? And then there's going to be a further discussion on narrowing the definition.
>
> MS. SCHUYLER: Correct. We're happy to do.

(June 7, 2022 Hearing Transcript 175:1-21).

Nothing in the additional submissions by Pearson changes the analysis and decision of Judge Keil. Pearson claims, without any detailed support, that if it were required to produce documents in response to these 2 RFPs, it would incur "thousands of hours and hundreds of thousands (or millions) of dollars" to search for responsive documents. As the Special Master

made clear during the April 4th hearing, such generalized assertions without detailed support are insufficient to consider in any burden or proportionality analysis.

More importantly, the requests that Chegg seeks to compel actually consist of four specific searches with specific proposed search terms to be run against 26 Pearson custodians, not the "hundreds of current and former employees and consultants" that Pearson argues would create an undue burden. (*See* April 12, 2023 Reply at 3). Chegg has reasonably offered to meet and confer with Pearson if the proposed search terms generate an unreviewable number of hits. The Special Master agrees with this reasonable approach.

Based on the foregoing, the Special Master grants Chegg's application to compel Pearson to produce documents responsive to RFP 57 and RFP 77, narrowed by the additional limitation that the information must relate to end of chapter questions and solutions.

## IV.  ORDER

**IT IS** on this 24th day of May, 2023,

**ORDERED** that Chegg's application to compel Pearson to produce documents responsive to RFP 57 and RFP 77 is granted; and it is further

**ORDERED** that Pearson shall run the four searches with search terms set forth in the April 12, 2023 Reply submission from Chegg against the 26 Pearson custodians' documents; and it is further

**ORDERED** that the parties shall meet and confer in the event the search terms generate an unreviewable amount of hit counts.

**SO ORDERED**.

                                                  /s/ *Jose L. Linares*
                                                  Hon. Jose L. Linares, U.S.D.J. (Ret.)