# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEARSON EDUCATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHEGG, INC., <br><br> Defendant. | Civil Action No.: 21-16866 <br><br><br> **OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER RE: DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS RE: CHEGG'S "STEP-BY-STEP SOLUTIONS."** |

**LINARES, J.**

This matter comes before the Special Master by way of Defendant Chegg, Inc.'s letter application to compel Plaintiff Pearson Education, Inc., to produce certain documents regarding the "reasonableness" of Chegg's step-by-step solutions for students (ECF No. 106 at 23-26). Pearson simultaneously opposed Chegg's application in the aforementioned joint letter. (*See generally* id.). The Special Master heard Oral Argument regarding this dispute on April 4, 2023. For the reasons set forth below, Chegg's application is **GRANTED**.

## I. BACKGROUND

The Special Master presumes the parties' familiarity with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

This copyright infringement action can be briefly summarized in the following manner. Pearson is a textbook company that creates and sells educational textbooks on a variety of topics. (ECF No. 1 ("Compl.") ¶ 1). Part of Pearson's textbook business model is to include "end-of-chapter" questions. (Compl. ¶ 16).

Chegg is in the business of selling study solutions, including, but not limited to, answers to textbook questions like those found in Pearson's textbooks. (Compl. ¶ 4). According to Pearson, Chegg has continued to reprint its end-of-chapter questions in connection with its study guides and step-by-step solutions. (Compl. ¶¶ 27, 29, 35). Pearson claims that this ongoing reproduction by Chegg infringes on Pearson's copyrights. (Id.). Accordingly, Pearson brought this action to recover damages and obtain an injunction prohibiting Chegg's reproductions. (*See generally* Compl.).

This current dispute centers on Chegg's request for information from Pearson relating to the reasonableness of Chegg's solutions and whether industry custom and practice informs that analysis. In defending this action, Chegg argues that its step-by-step solutions are original works rather than derivative works of Pearson's copyrighted material and that Pearson does not have a monopoly over the concepts in the textbooks. Thus, by the same token, any copying of Pearson's material, such as the inclusion of its end-of-chapter questions in Chegg's step-by-step solutions, constitutes fair use. (*See* June 7, 2022 Hearing Transcript 5: 19-25; 6: 1-2).

Chegg asserts that a factor to consider as part of the analysis of the fair use defense is that Chegg's conduct is consistent with industry custom and practice. Hence, Chegg served various discovery demands that required Pearson to run searches and produce documents that could possibly shed light on Chegg's conduct in the industry. Specifically, Chegg provided Pearson with a list of fifteen search terms that Chegg claims are narrowly tailored to this topic, which thus

far Pearson has refused to run. (ECF No. 106, Exhibit D at 3-4). Chegg contends that these documents will demonstrate that Pearson acknowledged that the solutions business, including Chegg's, was entirely lawful and consistent with industry custom and practice, and accordingly, Pearson has no legal basis to "handcuff" Chegg in developing facts to support its fair use defense. (ECF No. 106 at 24).

Chegg avers that it knows this discovery exists based on documents and evidence already produced by Pearson in response to other requests and that these communications exist because Pearson recognized for years that the solutions' business was lawful. (Hrg. Tr. at 78:1-6).[1] Chegg notes that discovery up to this point in the case has revealed instances where Pearson has acknowledged to Chegg, to third parties, and internally (i) that Chegg's solutions are non-infringing, (ii) that Chegg did not require a license to provide solutions to Pearson's questions, (iii) that Chegg owns the copyright in its solutions, (iv) that there are publicly available solutions to Pearson textbook questions from many sources, and (v) that Chegg was acting within common industry practice when answering questions from Pearson and from other textbook publishers. These instances, Chegg claims, demonstrate that Chegg's non-infringement position was reasonable – not just in its view – but also in Pearson's view. (ECF No. 106 at 24).

In response to Pearson's assertion that Chegg has never demanded discovery on this topic, Chegg points to multiple requests for production, including RFPs 1, 3, 5, 12, 15, 16, 18, 19, 24, 32, 36, 37 and 56, as well as Interrogatories 6 and 15. (ECF No. 106 at 23, n. 3). During the April 4, 2023 hearing, counsel for Chegg highlighted the following three requests for production as encompassing the discovery sought:

---

[1] The Transcript from the April 4, 2023 Hearing shall be cited as "Hrg. Tr." followed by the pertinent page and line numbers.

- Request for Production number 18 which requests all documents concerning the use of Pearson end-of-chapter questions by any person, including but not limited to Pearson's communications with licensees or alleged infringers of Pearson copyrights, as well as any agreements with third parties regarding end-of-chapter questions from Pearson textbooks or the creation of solutions to end-of-chapter questions from Pearson textbooks.  (Hrg. Tr. 95:1-8).

- Request for Production number 36 which requests all communications within Pearson regarding Chegg Study, its use, or its impact on Pearson or other textbook publishers, their products or services, or their customers or potential customers.  (Hrg. Tr. 95:9-14).

- Request for Production number 37 which requests all communications with third parties regarding Chegg Study, its use, or its impact on Pearson or other textbook publishers, their products or services, or their customers or potential customers.  (Hrg. Tr. 95:23-96:5).

Chegg argued during the April 4, 2023 hearing that discovery produced pursuant to these requests could include "acknowledgments about whether or not Chegg's study fell within normal industry, custom and practice."  (Hrg. Tr. 95:9-14). Specifically, documents responsive to these requests could show the extent to which "Pearson was communicating with a third party, acknowledging the fact that Chegg has a right" to create step-by-step solutions to Pearson's end-chapter-questions "according to normal industry custom and practice" and are highly relevant to Chegg's fair use defense and in determining any applicable remedies.  (Hrg. Tr. 96:1-6).

As to the fair use defense, Chegg argues that fair use of copyrighted material is not an act of infringement.  (Hrg. Tr. 79:3-4).  Although Section 107 lists a number of factors to consider in determining whether a use is fair, that list is not exhaustive.  (Hrg. Tr. 79:4-7).  Relying in large part on *Google LLC v. Oracle America, Inc.,* 141 S. Ct. 1183 (2021), Chegg explains that the United States Supreme Court recently confirmed that the fair use analysis is not rigid or limited to factors expressly listed in the Copyright Act.  (ECF No. 106 at 23).  Rather, the doctrine of fair use is an "equitable rule of reason," whose determination the Supreme Court has repeatedly indicated depends on the facts of each case. (Id.).  Citing to *Wall Data v. Los Angeles Cty. Sheriff's*

4

*Dept,* 447 F.3d 769 (9th Cir. 2006), Chegg states that the Ninth Circuit explained that "as we balance these factors, we bear in mind that fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable." *Id.* at 778.

Chegg challenges the core of Pearson's argument that Third Circuit case *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197 (3d Cir. 2002)[2] forbids consideration of custom and practice. Pearson's position, Chegg insists, is flatly wrong. Citing binding precedent that comes both before and after *Dun & Bradstreet* was decided, Chegg argues that this Third Circuit case directly contradicts the Supreme Court's guidance that there is no exhaustive list of what is relevant to fair use and each case stands on its own. (ECF No. 106 at 23-24). To the contrary, industry custom and practice have long been recognized as something that may show that a use is fair. (Hrg. Tr. 80:6-9). Therefore, Pearson has shown no basis why Chegg cannot obtain discovery to highlight Pearson's understanding of industry custom and practice.

Chegg also contends that this discovery is critical for determining the remedies available in this case. With regard to injunctive relief, Chegg claims that Pearson is seeking to "shut Chegg down." (Hrg. Tr. 80:13-16). It argues that under existing precedent, an injunction "does not automatically issue" in copyright cases "even after prevailing on the merits." (ECF No. 106 at 25). Rather, a party seeking a permanent injunction must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tip in its favor, and (4) an injunction would not disserve the public interest. *Id.,* (citing *TD Bank v. Hill*, 928 F.3d 259, 279-80 (3d Cir. 2019)).

---

[2] Pearson also argues that *Bellsouth Advertising & Publishing Corp. v. Donnelley Info. Pub., Inc.,* 719 F. Supp. 1551 (S.D. Fla. 1988), similarly forbids consideration of custom and practice.

5

One of the pertinent factors in the injunction analysis is whether enjoining the complained of conduct would serve the public interest.  Chegg asserts that one of the considerations relevant to assessing this factor is the degree to which the defendant reasonably believes the conduct was not infringing. (ECF No. 106 at 25).  Hence, Chegg concludes that the demanded discovery would inform this part of the analysis because it would bolster Chegg's position that its conduct was routine in the industry and therefore Chegg could not have believed it was infringing. (Id.).

Lastly, Chegg maintains that this discovery is relevant to calculating any statutory damages and the availability of attorneys' fees. (Id. (citing 17 U.S.C. § 504(b)-(c)); *Kirtsaeng v. John Wiley & Sons, Inc.,* 579 U.S. 197 (2016)).  Therefore, according to Chegg, the Court should order Pearson to run narrowly tailored searches utilizing the fifteen search terms Chegg proposes in Exhibit D of the Joint Letter submission. (ECF 106, Exhibit D at 3-4).

Pearson opposes Chegg's request for the communications on several grounds.  First, it argues that Chegg never requested discovery related to "the reasonableness of Chegg's step-by-step solutions." (ECF No. 106 at 25).  While Chegg cites to multiple requests for production in its Joint Letter submission, as well as during the April 4, 2023 hearing, Pearson insists that none are related to these materials. (Id.).  Pearson stresses that none of the search terms reflected in the discovery requests concern or even mention "reasonableness." (Id.).

In addition, Pearson claims that Chegg does not identify what discovery it believes is missing and that it has already produced all responsive communications between Chegg and Pearson. (ECF No. 106 at 26).

Conceding that internal employee communications related to the reasonableness of Chegg's step-by-step solutions exist, Pearson insists that its employees' personal viewpoints are irrelevant, as these individuals are not attorneys. (Hrg. Tr. 91: 7-21).  Moreover, Pearson argues

that Judge Kiel has repeatedly found that evidence related to Pearson's subjective state of mind is irrelevant. (Hrg. Tr. 100:6-8).

Pearson also argues that Chegg is wrong in relying on Ninth Circuit cases while ignoring controlling Third Circuit precedent *Dun & Bradstreet*. Specifically, Pearson contends that the Third Circuit could not be clearer in *Dun* that "custom and usage may not be invoked to relieve a defendant of the clear cut obligations imposed by the application of the [copyright] statute." *Dun & Bradstreet,* 307 F.3d at 212. To the contrary, "defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble." *Id.* at 211. Insisting that copyright infringement is a strict liability offense, Pearson states that under *Dun,* applying industry custom and practice does not relieve a defendant of its obligations under the Copyright Act. Doing so would effectively render *Dun* meaningless if every defendant could argue custom and practice in conjunction with a fair use defense. (Hrg. Tr. 88:8-21).

Pearson further argues that *Google* has no application here because that case was about software development. (Hrg. Tr. 89:24-25). It contends that in deciding that case, the Supreme Court stated that it was not overturning or modifying earlier cases involving fair use. Accordingly, Pearson advances that *Dun* controls. (Hrg. Tr. 90:1-2).

Pearson rejects the premise that equitable considerations under the fair use doctrine give courts the discretion to consider industry custom and practice in evaluating the fair use defense. (ECF No. 106 at 26). Pearson argues that Section 107 lists four specific, exhaustive factors in assessing fair use. (Hrg. Tr. 88:25-89:3). None of those factors include custom and practice. (Hrg. Tr. 89:3-4). Citing *Bellsouth Advertising & Publishing Corp. v. Donnelley Info. Pub., Inc.,* 719 F. Supp. 1551 (S.D. Fla. 1988), Pearson maintains that "just as the widespread use of speed limits is

7

irrelevant to the crime of speeding, industrial piracy, even if widespread, should not be probative to whether such piracy is nefarious." (ECF No. 106 at 26 (citing *Bellsouth Advertising & Publishing Corp. v. Donnelley Info. Pub., Inc.,* 719 F. Supp. 1551 (S.D. Fla. 1988)).

During the April 4, 2023 hearing, Pearson also relied on *Petrella v. MGM*, 572 U.S. 663 (2014), where the Supreme Court considered whether the laches defense could be asserted in copyright matters. The Court held that a copyright owner can sit on their rights and not enforce as long as they want and not be subject to laches. *Petrella v. MGM*, 572 U.S. at 686-687. Contrary to trademark law, where a party can waive its rights by failing to enforce them, Pearson claims that in *Petrella* the Court clarified that a party cannot use an equitable defense to avoid obligations under the Copyright Act. (Hrg. Tr. 86:3-8).

Finally, Pearson refutes Chegg's entitlement to discovery concerning the "public availability" of solutions to Pearson's textbook questions from sources other than Chegg because, by definition, publicly available solutions are public and Pearson's internal documents have no bearing on that. (ECF No. 106 at 26).

## II. **LEGAL STANDARD**

Rule 26 explains that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The broad scope of the discovery rules and liberal interpretation given them by Courts shows that Congress realized that a "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947) (emphasis added).

## III.  ANALYSIS

1. **Judge Kiel's Previous Rulings Do Not Preclude Discovery Into The Reasonableness of Chegg's Step-By-Step Solutions**

As a preliminary matter, the Special Master addresses the Parties' argument related to prior decisions made by the Court.  Specifically, in opposing Chegg's application, Pearson argues that Judge Kiel previously ruled that Chegg is not entitled to any discovery related to Pearson's subjective state of mind.  Therefore, Chegg is precluded from seeking discovery related to the reasonableness of its step-by-step solutions under industry custom and practice.

Chegg disputes that Judge Kiel had previously denied any discovery related to Pearson's subjective state of mind, countering that Judge Kiel, as with many other discovery issues, left this issue open for re-examination should the circumstances dictate.  (*See* December 5, 2022 Hearing Transcript 25:5-8).

The Special Master has reviewed the December 5, 2022 hearing transcript and it does not appear that this specific discovery request was ruled upon by Judge Kiel.  More importantly, the discovery sought here goes beyond Pearson's subjective state of mind.  The issue is not just whether or not Pearson believed it, but what Pearson did, what actions did it take, what were Pearson's communications with third parties, which could inform on an industry custom and practice of which Pearson, Chegg and other third parties were aware and acted in conformity therewith.  Broadly stated, the information is about the manner in which Pearson acted in the marketplace and how it behaved with respect to third parties.  Accordingly, the reasonableness discovery is not foreclosed by any of Judge Kiel's prior rulings.

2. **Chegg's Document Requests Encompassed the Demanded Discovery**

Chegg cites to multiple discovery requests in support of its application, including RFPs numbers 1, 3, 5, 12, 15, 16, 18, 19, 24, 32, 36, 37 and 56, as well as Interrogatories numbers 6 and

9

15. During the April 4, 2023 hearing, counsel for Chegg highlighted three specific RFPs: 18, 36 and 37 (the "Narrowed Discovery Requests").

The Special Master agrees with Chegg that the Narrowed Discovery Requests sufficiently encompass the reasonableness discovery. These requests seek, among other things, documents related to the use of Pearson's end-of-chapter questions, the creation of solutions to these questions by Chegg and others, the impact of the solutions on the marketplace, and communications within Pearson and with third parties regarding the same.

Determining whether a specific action is reasonable under industry custom and practice involves considering the prevailing norms, standards, and practices within the industry. The Special Master agrees with Chegg that requiring use of the express term "reasonableness" in conducting the discovery searches could unduly narrow the universe. (Hrg. Tr. 108:3-20). The mere fact that Chegg's proposed search terms omit the word "reasonableness" is of no consequence since reasonableness is a determination made on a case-by-case basis, depending upon relevant circumstances. This could require an assessment of a variety of documents in the aggregate. *See Google,* 141 S. Ct. at 1196 (explaining that the fair use provision sets forth "general principles, the application of which requires judicial balancing, depending upon relevant circumstances, including 'significant changes in technology'").

### 3. Industry Custom and Practice Is Relevant for Discovery Purposes to the Fair Use Analysis and to Determining Remedies in This Case

The Special Master agrees with Chegg that *Google* is controlling and Chegg is entitled to discovery related to the reasonableness of its step-by-step solutions under industry custom and practice for purposes of asserting a fair use defense and determining remedies in this case.

### A. Fair Use

In *Google,* the defendant copied approximately 11,500 lines of declaring code from an application programming interface (API). *Google v. Oracle,* 141 S.Ct. at 1191. For argument's sake, the Court assumed that the declaring code that made up the API was copyrightable. *Id.* at 1197. The Court nevertheless found that the copying constituted a fair use. It concluded that where a defendant re-implemented a user interface, taking only what was needed to put their accrued talents to work in a new and transformative program, defendant's copying of the API was a fair use of that material as a matter of law. *Id.*

Pearson is correct that the Court did not expressly use the terms "reasonableness" or "custom and practice" in its analysis. *Id.* at 1203. However, it nevertheless conducted a robust analysis into the relevant industry's custom and practice of copying API and the reasonableness thereof under the specific circumstances. *Id.* The Court emphasized the transformative nature of Google's use of the API code, as it enabled the creation of a new platform and allowed programmers to utilize their existing skills in new ways. *Id.* This consideration aligns with industry custom and practice, as it expressly recognized the established methods utilized by software developers.

Additionally, the Court examined the "effect upon the potential market" under Section 107. *Id.* at 1189. This factor involves assessing whether the defendant's use of the copyrighted work could harm the market for the original work. *Id.* The Court determined that Google's use of the API code did not usurp or harm Oracle's market for licensing the Java platform. *Id.* This assessment implicitly took into account the reasonableness of Google's actions based on industry custom and practice. *Id.*

Thus, while the facts of *Google* focused on API, the proposition for which it stands is not as narrow as Pearson suggests. Rather, the Court provided an in depth analysis of the fair use doctrine, reasoning that the doctrine, which originated "in the courts," has been described "as an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Id.* at 1996 (citing *Stewart v. Abend,* 495 U. S. 207, 236 (1990)).

Pearson does not dispute Chegg's contention that discovery thus far has revealed several instances where Pearson has acknowledged that Chegg's solutions are non-infringing based on industry standards. Rather, Pearson counters that industry custom and practice are irrelevant to whether Chegg's conduct was infringing because copyright infringement is a strict liability offense and the four Section 107 factors are exhaustive.

However, the Special Master disagrees with Pearson that *Dun* is applicable here. *Dun* was decided within the context of a summary judgment proceeding as opposed to a discovery dispute. *Dun & Bradsteet,* 307 F.3d at 197. The defendant was a consultant who worked for the plaintiff and violated the express terms of the parties' license and non-disclosure agreements. *Id.* at 211. More significantly, the defendant did not assert a fair use defense, implicating equitable considerations such as industry custom and practice. Rather, the defendant argued that its copying of plaintiff's source code was common industry custom and practice amongst other consultants and therefore its conduct was not infringing. *Id.*

Contrary to Pearson's contention, the Third Circuit did not entirely foreclose the possibility of considering custom and practice in *Dun*. The court concluded that "[c]ustom and practice in the computer industry, and the evidence of it in [that] record [was] vague and conclusory, [was] no authority to disregard or trump the specific terms of a valid license agreement or the provisions

of the Copyright Act." *Id.* at 211-212. Here, Chegg is seeking to obtain discovery necessary to establish relevant industry custom and practice in support of its defenses in the case and the availability of certain remedies. Simply because Chegg is able to obtain these documents through discovery does not mean that the documents will be ultimately admissible to prove a fair use defense. *See* Fed. R. Civ. P. 26(b)(1).

Furthermore, in applying Section 107 "courts have understood that the provision's list of factors is not exhaustive, that the examples it sets forth do not exclude other examples, and that some factors may prove more important in some contexts than in others." *Google v. Oracle,* 141 S.Ct. at 1188. In other words, "courts have understood the provision to set forth general principles, the application of which requires judicial balancing," based upon the relevant circumstances. *Id.* at 1197.

Chegg is correct that under binding Supreme Court precedent, custom and practice, and the reasonableness thereof, are relevant considerations in assessing a fair use defense. *See generally Google v. Oracle,* 141 S.Ct. 1183. Other courts have recognized as much providing that "fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, *i.e.,* where the 'custom or public policy' at the time would have defined the use as reasonable." *See Wall Data, Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 778 (9th Cir. 2006) (quoting Subcomm. on Patents, Trademarks & Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of Copyrighted Works 15 (Latman) (Comm. Print 1960)). Indeed, the legislative history on fair use summarized the various tests for fair use as follows: "[I]mportance of the material copied or performed from the point of view of the reasonable copyright owner. In other words, would the reasonable copyright owner have consented to the use?

13

At times, custom or public policy defines what is reasonable." *Oracle v. Google,* 2016 WL 1698107 at *3 (quoting Latman, Study No. 14, Fair Use of Copyrighted Works, at 15 (1958)).

Ultimately, "fair use is a mixed question of law and fact." *Google*, 141 S. Ct. at 1199 (citing *Harper & Row,* 471 U.S. at 560). Applying a legal "fair use" conclusion may involve determination of subsidiary factual questions, such as "whether there was harm to the actual or potential markets for the copyrighted work" or "how much of the copyrighted work was copied." *Google,* 141 S. Ct. at 1199. Under these circumstances, discovery into whether Pearson believed that Chegg's solutions were non-infringing under industry custom and practice is directly relevant to Chegg's fair use defense.

Moreover, the Special Master disagrees with Pearson regarding the application of *Petrella* to this case. The facts in *Petrella* were limited to assessing the viability of a laches defense in a copyright action. The case did not discuss fair use or otherwise negate the Court's holding in *Google. See generally Petrella v. MGM,* 572 U.S. 663.

### B. Remedies

Additionally, Chegg is correct that the reasonableness discovery is also relevant in determining the remedies available in this case. As a matter entrusted to a court's equitable discretion, a permanent injunction "does not automatically issue" even after prevailing on the merits, a proposition that Pearson does not dispute. *TD Bank N.A. v. Hill,* 928 F.3d 259, 278 (3d Cir. 2018). "The Copyright Act does not direct courts to depart from traditional principles of equity in adjudicating requests for injunctive relief. . ." *Id.* at 279. Courts should not make a presumption of irreparable harm or that a legal remedy would be inadequate simply because the non-infringing party prevailed on the merits. *Id.* In considering the propriety of a copyright

injunction, a court should not place a "thumb on the scales" or merely perform a perfunctory recognition that injunctions do not automatically issue. *Id.* Rather, courts are required to consider each of the four factors prior to issuing a permanent injunction. *Id.* In weighing the third prong of the injunction test, whether the balance of hardships tips in favor of an injunction, courts should consider "the degree to which the defendant reasonably believed his conduct was non-infringing" amongst other factors. *Id.* at 282.

Accordingly, given that Chegg is accused of willful copyright infringement, it is entitled to obtain discovery regarding the reasonableness of its position that Chegg's textbook solutions are non-infringing. If Chegg is able to establish that it is accepted industry practice for a third party to provide solutions to textbooks, it could mitigate a charge of willful infringement and establish a custom relevant to determining whether the use was fair, thereby potentially negating any damages that would flow from "willful" infringement. Furthermore, a determination of whether Chegg's solutions were objectively reasonable will impact the calculus of actual and statutory damages and the availability of fee-shifting. *See* 17 U.S.C. § 504(b)-(c); *Kirtsaeng v. John Wiley & Sons, Inc.,* 579 U.S. 197 (2016) (whether either parties' position is "objectively unreasonable" is given "substantial weight" in determining whether to make an award of attorneys' fees to a prevailing party under 17 U.S.C. § 505). The fact that Pearson has not yet elected statutory damages has no bearing on the analysis, as Pearson still reserves the right to do so.

Based on the foregoing, the Special Master grants Chegg's application to compel Pearson to run searches of its internal documents and communications, and those with third parties, related to the reasonableness of Chegg's step-by-step solutions under industry custom and practice.

## IV. ORDER

**IT IS** on this 2nd day of June, 2023,

**ORDERED** that Chegg's application to compel Pearson to run searches of its internal documents and communications, and those with third parties, related to the reasonableness of Chegg's step-by-step solutions under industry custom and practice is granted; and it is further

**ORDERED** that Pearson shall run the searches utilizing the fifteen search terms set forth in the Joint Letter, dated February 1, 2023, Exhibit "D"; and it is further

**ORDERED** that the parties shall meet and confer in the event the search terms generate an unreviewable amount of hit counts.

**SO ORDERED.**

                                                                                                                                                     /s/ Jose L. Linares
                                                                                                                                                     Hon. Jose L. Linares, U.S.D.J. (ret.)