# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEARSON EDUCATION, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>CHEGG, INC.,<br><br>    Defendant. | Civil Action No.: 21-16866<br><br><br>**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION** |

  **LINARES, J.**

  This matter comes before the Special Master by way of Plaintiff Pearson Educations, Inc.'s June 16, 2023 letter application ("Motion") for reconsideration of the portion of the Special Master's June 5, 2023 Order (ECF No. 135) denying Pearson's motion to compel Defendant Chegg, Inc. to produce additional data fields from its Textbook Solutions database that identify the names of individuals who prepared answers to Pearson's end of chapter questions.[1]  Chegg opposed this application by letter dated June 27, 2023 ("Chegg Opp.").  For the reasons set forth below, the Special Master hereby denies Pearson's application for reconsideration.

  **I.  BACKGROUND**

  The Special Masters presumes the parties familiarity with the factual background and procedural posture of this matter.  Accordingly, the Special Master will only recite the facts

---

[1] Pearson's motion to compel was raised before the Special Master at ECF 106 at 3.

ME1 45682388v.1

relevant to the disposition of the subject dispute.

This dispute involves Pearson's request for information contained in additional fields from Chegg's Textbook Solutions database ("TBS Database"). Specifically, Pearson originally sought to compel Chegg to produce the field from the TBS Database that contains the names of the individuals who created the solutions to Pearson's end-of-chapter questions. According to Chegg, this field contains the names of "thousands of subject matter experts in India who create solutions for Chegg's Textbook Solutions service." (Chegg Opp. at 1). In the June 5, 2023 Order, the Special Master denied Pearson's request, on the basis that Judge Edward S. Kiel, U.S.M.J. previously ruled that the names of all of the individuals who authored the solutions are not relevant.

Although styled a motion for reconsideration, Pearson's current application also includes a request that appears to modify or narrow its original discovery request, which nonetheless was not specifically raised before the Special Master previously. The modified relief includes a request that Chegg (i) "identify, for each of the works in suit, the five freelancers who answered the most end of chapter questions" and (ii) "produce otherwise responsive documents without redacting identifying information for freelancers or other third-party contractors/consultants."

This Opinion and Order will address both aspects of Pearson's application.

## II.    ANALYSIS

In the June 5, 2023 Order, the Special Master held:

With respect to Pearson's request for identifying information of individuals who prepared answers to Pearson's end of chapter questions, the Special Master agrees with Chegg that Judge Kiel previously ruled that the names of the individuals who authored the solutions are not relevant. (*See* December 5, 2022 Hearing Transcript at 136:9-137:23; Chegg's April 21, 2023 Supplemental Submission at 5). In addition, during the April 4, 2023 hearing on this topic, Pearson made clear that what it really wants is source information ("I want to know when somebody was sitting down to draft the solution to a question, what they were looking at, how did they draft it"), which relates to and should be covered by the content category described above. (Hrg. at 54:14-55:7). Although the Special Master understands

2

that the Court's prior ruling was without prejudice, Pearson has not articulated a new reason as to why this prior decision of the Court should be revisited at this time.

The scope of the Special Master's June 5, 2023 Order was limited to the specific issue that was before him. The request was for an Order to compel Chegg to produce data from an additional field in the TBS Database that identified the names of all of the authors that created the solutions. Pearson concedes in its application that the Court previously denied this request and ruled that this information was not relevant ("While Magistrate Judge Kiel denied the request without prejudice on relevance grounds and ruled that Chegg need not identify *all* the freelancers at issue . . . "). While Pearson is correct that Judge Kiel's prior ruling was without prejudice, Judge Kiel also stated in his ruling, "[ . . . ] I'm doing it based upon relevancy. I don't see what the relevancy of having their names. If you can show me later on that there's some relevancy and if you need – if you want to ask them, hey, is there somebody that did most of these questions – right? – if you -- [. . . ] If you think that there's some other reason that you need it, you can make that application." (*See* December 5, 2022 Hearing Transcript at 136:9-137:23).

In its motion to compel that was decided by the Special Master, Pearson made the same arguments as it made to Judge Kiel and sought the same relief – the production of the additional field from the TBS Database that identified all of the names of the authors. Because Judge Kiel previously ruled on this issue, and because Pearson did not articulate a new reason why the prior decision of Judge Kiel should be revisited, the Special Master denied Pearson's motion to compel. (ECF No. 135).

In the present application for reconsideration, Pearson argues that in order to prove that Chegg's answers to Pearson's end-of-chapter questions are unauthorized derivative works under the Copyright Act, it needs to understand what source material and underlying information Chegg's freelancers used to prepare answers, the process used to create answers, what the

3

freelancers actually relied on, what they actually did, and how they actually did it. Pearson argues that it needs to question some of the freelancers in order to get this information. (Motion at 1). In response, Chegg argues that Pearson's motion for reconsideration requests the same discovery based on the same rationale that was denied by Judge Kiel and the Special Master.

Local Civil Rule 7.1(i) governs motions for reconsideration in this District. It requires a movant to set forth "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L.Civ.R. 7.1(i). To prevail on a motion for reconsideration, the movant must show at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (citations omitted).

"To prevail under the third prong, the movant must show that 'dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered.'" *Mason v. Sebelius*, 2012 WL 3133801, at *2 (D.N.J. July 31, 2012) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)). In other words, reconsideration is not warranted where "(1) the movant simply repeats the cases and arguments previously analyzed by the court; or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 167-68 (D.N.J. 2013) (internal citations omitted). "Unless a court has truly failed to consider pertinent authorities or evidence that could not with reasonable diligence have been presented earlier, a motion to reconsider a decision (even one that may contain an error) is generally futile." *Id.* at 168. Indeed, reconsideration of a decision is an "extraordinary remedy," which should be granted "very sparingly." *Friedman v. Bank of Am., N.A.*, 2012 WL 3146875, at *2 (D.N.J. Aug. 1, 2012).

ME1 45682388v.1

Pearson argues that the June 5, 2023 is based upon two errors of fact: (i) the Order assumes that Chegg's production of fields from the TBS Database responsive to requests relating to content or source information "moots the need for identification of freelancers," and (ii) the Order erred in concluding that Magistrate Judge Kiel previously ruled that discovery of the identities of individual freelancers are "foreclosed entirely" on relevance grounds. (Motion at 2-3). Both assertions are based upon a misreading of the June 5, 2023 Order.

First, the June 5, 2023 Order did not deny Pearson's request based on mootness. The Order simply refers to arguments Pearson itself made relating to its need for source information to support its claim for the discovery requested. In fact, Pearson makes those same arguments again on this motion for reconsideration. As Chegg correctly points out, there are other ways for Pearson to seek information about Chegg's sources, other than through the TBS Database, such as a Rule 30(b)(6) deposition notice. The fact that other fields from the TBS Database relating to source information, which Pearson requested as part of its motion to compel, do not contain information useful to Pearson (a fact that Chegg asserts Pearson knew all along), does not constitute an error of fact that warrants reconsideration here.

Second, nowhere in Judge Kiel's ruling on this issue nor in the June 5, 2023 Order is it suggested that discovery of the identities of individual freelances are "foreclosed entirely." Rather, the specific relief sought by Pearson – the production of all of the names of the authors from the applicable field in the TBS Database – was denied at that time. Accordingly, because Pearson simply repeats the arguments previously made to the Special Master and does not identify a clear error of law or fact that warrants reconsideration, the motion for reconsideration is denied.

5

As part of its application for reconsideration, Pearson has included a modified or narrowed request for similar discovery that was not specifically raised before the Special Master previously. Rather than seeking all of the names of the freelancers from the TBS Database field, Pearson now seeks an Order requiring Chegg to identify, for each of the 150 works in suit, the names and email addresses for the 5 freelancers who answered the most questions. (*See* Motion at 6). This modified request, however, is encompassed by the prior broader request, and Pearson makes the same arguments for this modified request as it did for its broader request (which Judge Kiel previously denied based on relevancy). Because Pearson has not articulated a new argument as to why the prior decision of the Court should be revisited at this time, this request is denied.

Pearson next argues that Chegg has improperly redacted the names of its freelancers/authors from otherwise responsive documents it has produced and that these redactions are unjustified and go beyond Judge Kiel's ruling on the issue. (Motion at 5). In response, Chegg argues that such redactions are reasonable and necessary to effectuate the Court's order that the names are not relevant. (Chegg Opp. at 7). The cases cited by Chegg in its Opposition, however, are distinguishable and do not support its position for such redactions here.

In *Engage Healthcare Communications, LLC v. Intellisphere, LLC*, 2017 WL 3624262 (D.N.J. Aril 26, 2017), *5, the Special Master acknowledged the general rule that "in the ordinary course, non-relevant information in an otherwise responsive document should be produced pursuant to Fed. R. Civ. P. 34. Moreover, non-relevant information that is propriety in nature that is contained in an otherwise responsive document should typically be produced pursuant to a [Confidentiality Order]." *Id.*, at *5.

6

Chegg cites to *Intellisphere* for the proposition that redaction of irrelevant information from otherwise responsive documents is proper if based on "a pre-existing agreement among the parties or a decision by the Court." (Chegg Opp at 7.). While there are cases that have found redactions proper based upon a pre-existing agreement among parties, that is simply not the case here. There is no agreement between the parties prior to production that the parties may redact irrelevant information.

Moreover, those cases where a decision by the Court after-the-fact found the redaction of irrelevant information proper involved a unique set of facts and circumstances that are not present here. In *Intellisphere*, the Special Master found special circumstances existed where the parties were direct competitors in the medical publishing industry, the principal of the plaintiff and the principal of defendant were brothers, the redacted documents at issue contained highly sensitive and proprietary data, and plaintiff's counsel represented plaintiff in multiple capacities such that an "attorneys eyes only" designation would not afford full protection. Id., at *5.

In *Gates v. Rohm and Haas Co.*, 2007 WL 295416 (E.D. Pa. Jan. 29, 2007), the ruling was limited to the specific procedural posture in that case. In that case, pursuant to a pre-trial case management order, the parties were engaged in class-related discovery only. While the Court permitted the redactions after-the-fact, holding that "disclosure of the redacted material will not advance the preparation for or resolution of the class certification issues that are the purpose of current discovery activities," it specifically left open the possibility that during the merits phase of discovery, the redacted information could be discoverable and subject to production. Id., at *1. Likewise, *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI, Inc,* 2019 WL 1460619 (C.D. Ca. Feb. 1, 2019) is procedurally distinguishable as that case involved a stipulated temporary restraining order in which the parties agreed that discovery would proceed on the sole issue of defendant's

7

affirmative defense under 28 U.S.C. §1498(a) raised in its pending summary judgment motion, and that all other discovery shall be stayed.

Because the instant case does not involve unique facts and circumstances or the particular procedural posture such as those that existed in the cases described above, or a pre-existing agreement among the parties, Chegg's redactions are not warranted.

Accordingly, the Special Master grants Pearson's request that Chegg produce otherwise responsive documents without redacting the names or email addresses of its experts/freelancers/authors.

### III.  ORDER

**IT IS** on this 31th day of July, 2023,

**ORDERED** that Pearson's application for reconsideration of that portion of the Special Master's June 5, 2023 Order denying Pearson's motion to compel Chegg to produce additional data fields from its TBS database that identify all of the names of individuals who prepared answers to Pearson's end-of-chapter questions is hereby **DENIED**; and it is further

**ORDERED** that Pearson's request that Chegg identify, for each of the 150 works in suit, the names and email addresses for the 5 freelancers who answered the most questions, is hereby **DENIED**; and it is further

**ORDERED** that Pearson's request that Chegg produce otherwise responsive documents without redacting the names and email addresses of freelancers who prepared answers to Pearson's end-of-chapter questions is hereby **GRANTED;** and it is further

**ORDERED** that Chegg shall produce unredacted versions of those previously produced responsive documents within five days.

**SO ORDERED**.

                                                                          /s/ *Jose L. Linares*

                                                                         Hon. Jose L. Linares, U.S.D.J. (Ret.)